# EXHIBIT B

# TRADE AGREEMENT

### between

## DISTRICT COUNCIL NO. 9, INTERNATIONAL UNION OF PAINTERS and ALLIED TRADES, A.F.L. - C.I.O.

### and the

## ASSOCIATION OF MASTER PAINTERS and DECORATORS OF NEW YORK, INC.

### and

## THE ASSOCIATION OF WALL, CEILING, & CARPENTRY INDUSTRIES OF NEW YORK, INC.

### and

## THE DRYWALL TAPING CONTRACTORS' ASSOCIATION OF GREATER NEW YORK

### and

## THE WINDOW AND PLATE GLASS DEALERS ASSOCIATION

### May 1, 2019 through April 30, 2024





# Table of Contents

Page

**JURISDICTION, RECOGNITION & SCOPE OF WORK** ....................................................... 1

    Maintenance Work .......................................................................................................... 2

    Maintenance Rates .......................................................................................................... 2

**TERRITORIAL JURISDICTION** ......................................................................................... 3

**OBLIGATIONS OF THE PARTIES** ..................................................................................... 3

    Supremacy Clause .......................................................................................................... 4

    Non-Discrimination ......................................................................................................... 4

    Whistleblower Protection ................................................................................................ 5

    Union Member Non-Compete ......................................................................................... 5

**HIRING PROCEDURES** ...................................................................................................... 6

    Three Hundred Fifty Hour Rule ...................................................................................... 6

    Owner/Member Rule ....................................................................................................... 6

**WAGES – JOURNEYPERSONS** ......................................................................................... 6

    Building Owner/Manager Utilizing Association Member ............................................... 9

    Wages – Drywall Finishing Rates ................................................................................... 9

    Allocation of Economic Package ..................................................................................... 9

    New York City Earned Sick and Safe Time Act Waiver ................................................. 10

    Wallcovering .................................................................................................................. 10

    Layoffs ........................................................................................................................... 10

    Foremen .......................................................................................................................... 11

**COST OF LIVING ADJUSTMENT** ..................................................................................... 11

**WORKING CONDITIONS** .................................................................................................. 12

    Standard Work Week ...................................................................................................... 12

**OVERTIME AND OVERTIME PERMITS** .......................................................................... 13

    Holidays ......................................................................................................................... 13

    Overtime Violations ....................................................................................................... 14

**ASSOCIATION – UNION COMMUNICATION** ................................................................. 14

**OUT OF JURISDICTION WORK** ....................................................................................... 14

**JURISDICTIONAL WORK RULES** .................................................................................... 14

    Out of Jurisdiction Work ................................................................................................ 14

2·D



**APPRENTICE REGULATIONS** ................................................................. 15

    Wages - Apprentices ......................................................................... 15

    Wallcoverer Apprentice Bills ........................................................... 17

    Apprentice Ratio ............................................................................... 17

**PAYMENT OF WAGES** ....................................................................... 18

**JOB STEWARDS** ................................................................................. 19

    Removal of Job Stewards .................................................................. 19

    48-Hour Hearings ............................................................................. 19

    Use of Non-Union Employees .......................................................... 19

    Non-Payment or Shortage of Wages or Fringe Benefits ................... 20

**SHOP STEWARDS** .............................................................................. 21

    Annual Payroll .................................................................................. 21

    Removal of Shop Stewards ................................................................ 21

    Duties ................................................................................................ 21

    Shop Steward Reports ....................................................................... 21

**TIME FOR STEWARDS' DUTIES** ..................................................... 22

**STEWARDS' COMMITTEE** ................................................................ 22

**JOB REGISTRATION** ........................................................................ 22

**UNION REPRESENTATIVES** ............................................................ 23

**GRIEVANCES AND DISPUTES (EMPLOYEES)** .............................. 23

**JOINT TRADE COMMITTEE AND JOINT TRADE BOARD** .......... 24

    Joint Trade Committee ...................................................................... 24

    Joint Trade Board .............................................................................. 24

    Procedures ......................................................................................... 25

**RULES AND REGULATIONS** ............................................................ 25

    Arbitration Hearings ......................................................................... 26

    Hearing Procedures .......................................................................... 26

    Awards ............................................................................................... 28

    Fines and Penalties ........................................................................... 28

    Schedule of Fines .............................................................................. 29

**STRIKES AND LOCKOUTS** .............................................................. 31

**SUBCONTRACTS** .............................................................................. 32

**USE OF SPRAY AND PASTE MACHINES** ....................................... 33



**HEALTH AND SAFETY: GENERAL PROVISIONS** ........................................................... 33
    Protective Equipment ........................................................................................................ 34
    Security and Drug/Alcohol Tests ...................................................................................... 34
**HEALTH AND SAFETY RULES** ................................................................................... 34
    Uniforms ............................................................................................................................ 35
    Injuries .............................................................................................................................. 35
    Scaffolds ............................................................................................................................ 36
    OSHA Training .................................................................................................................. 36
**INSURANCE** .................................................................................................................. 36
**FRINGE BENEFIT CONTRIBUTIONS** ...................................................................... 36
    Electronic Voucher System ............................................................................................... 38
    Remittance Reports ........................................................................................................... 38
    Shop Steward Reports ....................................................................................................... 39
    Violations .......................................................................................................................... 39
    IUPAT Pension Fund ........................................................................................................ 39
    Finishing Trades Institute of New York and IUPAT Finishing Trades Institute ............... 40
    Painting Industry Insurance Fund ..................................................................................... 41
    Painting Industry Annuity Fund ....................................................................................... 42
    Finishing Industries Labor-Management Partnership ....................................................... 43
    District Council No. 9 Political Action Together – Political Committee ............................ 43
    Check -Off of Administrative Dues ................................................................................... 44
    Industry Promotion Funds ................................................................................................. 45
**ENFORCEMENT OF ARTICLE XX** ............................................................................ 47
    Payments ........................................................................................................................... 47
    Penalties ............................................................................................................................ 49
**BONDS, DAMAGES, FEES AND INTEREST** ............................................................. 49
    Trust Fund Hearing ........................................................................................................... 51
**CONDITIONS** ............................................................................................................... 52
    Most Favored Nations Clause ........................................................................................... 52
**JURISDICTIONAL DISPUTES** .................................................................................... 52
**NATIONAL LABOR RELATIONS ACT** ...................................................................... 52
**SAVINGS CLAUSE** ....................................................................................................... 53
**WALLCOVERERS' PRICE LIST AND GENERAL REGULATIONS** .......................... 53

22.



Wages and Benefits/Divisor...................................................................................................53

General Wallcoverer Regulations ........................................................................................54

Daily Timesheets..................................................................................................................54

Foremen ...............................................................................................................................56

Wallcoverers' Price List.......................................................................................................58

Quantity Discounts...............................................................................................................62

Paste Machine ......................................................................................................................62

National Pension and Fringes...............................................................................................63

Paperhanger Hourly Rate .....................................................................................................63

**DURATION OF AGREEMENT** ..............................................................................................64

**SIGNATURE PAGE** .................................................................................................................65

**INDEX**.......................................................................................................................................67

AGREEMENT, hereinafter designated as the Trade Agreement, dated this first day of May, 2019, by and between the Association of Master Painters and Decorators of New York, Inc.; The Association of Wall, Ceiling, & Carpentry Industries of New York, Inc.; the Drywall Taping Contractors' Association of Greater New York (in those counties and/or areas within the jurisdiction of the Union and not in the jurisdiction of any other union); and the Window and Plate Glass Dealers Association (for purposes of participation in the Benefit Funds only) (herein jointly referred to as the "Association(s)"), and District Council No. 9, International Union of Painters and Allied Trades ("I.U.P.A.T."), AFL-CIO (hereinafter designated as "the Union").

WHEREAS, the Parties hereto desire to establish wages and other terms and conditions of employment upon which Journeypersons and apprentices shall work for members of the Associations (it being agreed that the word "JOURNEYPERSON" shall mean all employees described by the IUPAT General Constitution Section 6 (issued January 1, 2015) or one who has completed one of the approved apprenticeship programs provided for herein).;

NOW THEREFORE, the Parties hereto agree as follows:

## JURISDICTION, RECOGNITION & SCOPE OF WORK

**Art. I. Sec. 1.** - The Associations, and all their members and all other Employers who hereafter become signatories to this Trade Agreement, recognize, acknowledge, and agree that the Union is the exclusive representative for the purpose of collective bargaining within the meaning of Section 9(a) of the National Labor Relations Act and that the Union has demanded recognition as such and has demonstrated through the use of authorization cards executed by a majority of the Association members' bargaining unit employees that it possesses the support of a majority of all employees of the Associations' members wherever such employees may be employed, in the following classifications of work:  all work described by the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES General Constitution section 6, issued January 1, 2015.

The Union recognizes that the Associations, because of their size and the nature of their membership in the painting and related industries of New York City, Westchester, Putnam, Nassau and Suffolk Counties, is the principal bargaining representative for all Employers working in the industries with whom the Union negotiates collective bargaining agreements, and any extensions or renewals thereof.

The Union shall give principal recognition to any successor association to the Association during the life of this Trade Agreement which (i) may be established; (ii) is affiliated with a national association whose members employ union employees only; and (iii) represents Employers in the same industries for which the Union negotiates collective bargaining agreements for work performed in the territorial jurisdiction defined in Art. I, Section 5, of this Agreement and any additional area the Union may be awarded by the I.U.P.A.T. General Executive Board.

**Art. I. Sec. 2.** - This Trade Agreement shall apply to all work involved in or related to the Painting and Protective Coatings Industry, which includes all finishes, drywall finishing, skim coating, prepping, application of wall coverings, including fabric panels, decorative work, finishing and refinishing of all materials including and not limited to all wood products, plastering preparatory to painting, Forbo corking, and all coating, staining and finishing of floors and toppings and all other work referred to in Section 6 the I.U.P.A.T. General Constitution

1

issued January 1, 2015, or which the General Executive Board of the I.U.P.A.T. puts into the work jurisdiction of the Union. This Trade Agreement will also include all work related to rigging, fireproofing, fire retarding, including but not limited to all intumescent paints, thermal coatings, surface preparation and clean-up of any kind as well as lead abatement and glazing. This Trade Agreement shall be specifically applicable to the application of photoluminescent or other illuminated material, including but not limited to, those materials installed for the purpose of establishing exit path markings and exit signs.

**Art. I. Sec. 3.** - The Union shall provide the Association a "first look" to bid on work where it has identified such work from developers and the Finishing Solutions Network (FSN).

**Art. I. Sec. 4.** - The Union agrees for the life of this Trade Agreement not to sign any agreements (through Local Union No. 1456 or otherwise) for direct hire of its members, unless there is no other way to protect its labor standards. Before agreeing to such a request, the Union agrees to refer any request of this type to the Joint Trade Board. The purpose of this referral is to allow an Association Employer the timely opportunity to bid and perform the work required by the user with Union members.

The Union will not sign an agreement directly with any employer until after this review process by the Joint Trade Board. The review process must be timely instituted within 24 hours to allow the Union to maintain its established standards. This provision does not pertain to traditional maintenance agreements or to direct hire contracts signed prior to this Trade Agreement where the Union retains the sole right to make the final determination. When the Joint Trade Board does agree to permit a maintenance agreement, the terms and conditions of that agreement must be provided to the Association. The Union also shall provide the Association with access to all existing maintenance agreements, whether signed by the Union or an Employer.

All maintenance work, whether performed by an Employer or through a direct hire contract with the Union (through Local 1456 or otherwise), shall be performed at a rate of eighty percent (80%) of the journeyperson package with a fifty-two (52) week guarantee and employees can work in multiple buildings where such buildings have the same owner or managing agent assuming the Employer provides a list of such buildings to the Union as soon as is practicable. :

The Association Employer shall have the right to reject any applicant for employment; provided, that on any job organized solely by District Council No. 9, 50% of the employees on that job shall be supplied by District Council No. 9.

2



## TERRITORIAL JURISDICTION

**Art. I. Sec. 5.** - The territorial jurisdiction of this Trade Agreement shall include all areas in the New York Greater Metropolitan Region (Brooklyn, Queens, Bronx, Manhattan, Staten Island, Nassau, Suffolk, Westchester and Putnam counties), and all such areas authorized by the I.U.P.A.T. General Executive Board.

## OBLIGATIONS OF THE PARTIES

**Art. I. Sec. 5(a).** - Mutual Good Faith. The Association obligates itself and all its members  and the Union obligates itself and all its members that they and each of them will, in good faith, live up to and conform with all the provisions of this Trade Agreement, and to all rules, regulations, requirements, and all procedures promulgated under and pursuant to the terms of this Trade Agreement; provided, however, that the Association shall not be obligated to take any action to require compliance with the terms of the Trade Agreement on the part of any person or firm which has been expelled from or has resigned from the Association, except as a prerequisite for the reinstatement of such member. If any Association Employer is expelled or resigns from the Association for any reason, the Employer will, without further negotiation, cease being bound to this Association Trade Agreement and will instead be bound to the Independent Trade Agreement. Each Association will be responsible for securing each of their members' agreement to this effect either through a written acknowledgment or through amendment to the Association's application. Each Association shall provide copies of such acknowledgment to the Union.

**Art. I. Sec. 5(b).** - Past Performance Clause. Except as otherwise provided in this Trade Agreement, the Associations and their members agree that all conditions of employment relating to wages, hours of work, overtime differentials, and general working conditions shall be maintained at no less than the highest standards in effect at the time of the signing of this Trade Agreement, and the conditions of employment shall be improved wherever specific provisions for improvement are made elsewhere in this Trade Agreement.

**Art. I. Sec. 5(c).** - Just Cause Clause. Although work in this industry is on a job to-job basis, no employee may be discharged or laid-off by any Association Employer except for just cause. All grievances arising under this section shall be referred to the Joint Trade Committee as provided in Art. XIII, Section 1.

**Art. I. Sec. 5(d).** - Supremacy Clause. The Associations and their members agree not to enter into any agreement or contract with their employees, covered under this Trade Agreement, individually or collectively, which in any way conflicts with the terms and provisions of this Trade Agreement. Any such agreement shall be null and void.

**Art. I. Sec. 5(e).** - Non-Discrimination. Neither party to this Trade Agreement shall discriminate against any employee with respect to employment by reason of union membership or race, religion/creed, color, sex, gender (including gender identity and sexual harassment), pregnancy, age, national origin, disability, sexual orientation, immigration, or citizenship status, credit history, salary history, predisposing genetic characteristics, arrest or conviction record, military status, unemployment status, caregiver status, marital status, partnership status, or status as a victim of domestic violence, stalking and sex offenses, or any other characteristics protected

3



by federal, state or local law. As applicable and appropriate, covered Association Employers will comply with the federal Family and Medical Leave Act.

**Art. I. Sec. 5(f).** - Union Security.  All present employees who are members of the Union on the effective date of this Trade Agreement or on the date of execution of this Trade Agreement, whichever is later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on and after the eighth day following the beginning of their employment, or on and after the eighth day following the effective date of this Trade Agreement or on or after the eighth day following the date of execution of this Trade Agreement, whichever is later.  No provision of this Article shall apply in any state to the extent that it may be prohibited by state law.  If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall be first met.

**Art. I. Sec. 5(g).** - If any provision of this Article is invalid under the law of any state wherein this Trade Agreement is executed, such provision shall be modified to comply with the requirements of state law or shall be renegotiated for the purpose of adequate replacement. If such negotiations shall not result in mutually satisfactory agreement, either party shall be permitted all legal or economic recourse.

**Art. I. Sec. 5(h).** - In those instances in which Article I, Section 4(f) may not be validly applied, the Association Employer agrees to recommend to all employees that they become members of the Union and maintain such membership during the life of this Trade Agreement, to refer new employees to the Union representative and to recommend to delinquent members that they pay their dues since they are receiving the benefits of this Trade Agreement.

**Art. I. Sec. 5(i).** - The Associations shall sign this Trade Agreement on behalf of their members.

**Art. I. Sec. 5(j).** - The Joint Trade Board (and not the Joint Trade Committee) shall have full authority to modify the terms of this Trade Agreement, and to pinpoint, maintain, and/or organize work covered under this Trade Agreement for the life of this Trade Agreement, with respect to market recovery and other relief work, organizing work, repaint recovery, and maintenance of work. The Union and the Associations agree to enter into a separate collective bargaining agreement, the jurisdiction of which will encompass the recovery of work historically performed by non-union contractors and maintenance of work.

Employers wishing to take advantage of the provisions of market recovery and other relief provisions shall make application to the Joint Trade Board, whom shall generally approve such applications and shall not unreasonably withhold its approval.  The Joint Trade Board, however, may withhold approval where it finds there is a reasonable basis to believe that the application of this provision will not materially advance the interests of the industry (e.g., where another discount has already been provided).  If other trades on the job have agreed to a concession, the Joint Trade Board will take that into consideration upon an application for relief under this Agreement. If the Joint Trade Board deadlocks on whether to grant approval, the Employer may request that the Joint Trade Board submit the request to arbitration.  Upon receipt of such request, the Joint Trade Board shall promptly submit such grievance or dispute to arbitration

4



pursuant to the Labor Arbitration Rules of the American Arbitration Association ("AAA"). The decision of the AAA arbitrator shall be final and binding.

**Art. I. Sec. 5(k). -** The Union and the Association recognize that the use of non-union labor threatens our industry and that it is in their mutual interest to identify those situations in which the Trade Agreement is being violated in this manner. Thus, consistent with the requirements of Art. IX, Section 1(C)(d), the Parties agree that THERE SHALL BE NO RETALIATION AGAINST ANY EMPLOYEE WHO PROVIDES INFORMATION CONCERNING POTENTIAL VIOLATIONS OF THIS TRADE AGREEMENT.

**Art. I. Sec. 6. -** All Parties agree that if a Building and Construction Trades Council negotiates a Project Labor Agreement for work also covered by this Agreement, the Project Labor Agreement shall supersede this Agreement in any instance of a conflict between the two.

**Art. I. Sec. 7. -** Each Association Employer shall provide to the union a completed District Council No. 9 Application and Disclosure Form and, as appropriate, individual, partnership or corporate verification.

**Art. I. Sec. 8(a). -** Members of the Union may not compete against Employers as non-signatory contractors or otherwise while directly or indirectly collecting benefits under the terms of this Agreement.

**Art. I. Sec. 8(b). -** Members of the Union are prohibited from creating a non-union painting and/or wallcovering company.

## HIRING PROCEDURES

**Art. II. Sec. 1. -** The Employer shall be free to seek referrals of applicants for employment as Journeypersons from the Union or from any source. However, no Employer shall seek to hire through an employment agency.

**Art. II. Sec. 2. -** Both the Employer and the Union shall to refer Apprentices for employment in accordance with the New York State Department of Labor rules. The Employers shall hire Apprentices only through the Union.

**Art. II. Sec. 3. -** Any Employer hiring a Journeyperson who is not a member of DC 9 shall first report, in writing, the name, address and social security number of each employee to the Union prior to the commencement of employment and the non-union Journeyperson shall, before commencing work, register with the Union. Apprentices shall be hired and transferred in accordance with this Agreement and as defined in the Apprenticeship curriculum. No current member of the Union will be required to work on any Organizing Work, Market Recovery, or Maintenance of Work. However, a current member of the Union may work on these jobs if he/she agrees to be referred to this work by the hiring Employer or the Union.

When working within the jurisdiction of this Agreement, the hiring Employer shall report the hiring of a non-union journeyperson to the Union prior to the commencement of employment. As an additional condition of hiring a worker from outside the Union, the hiring Employer shall guarantee said worker their first five hundred (500) hours of continuous employment as a Bargaining Unit Member.

**Art. II. Sec. 4.** - Any JOURNEYPERSON who is also an owner of a Signatory Employer shall guarantee and provide contributions to all Article XX fringe benefit funds for him or herself in an amount of at least 52 weeks per year and 35 hours per week for the duration of this Trade Agreement (provided that the rate of contributions shall be the full scale rate and not the maintenance, market recovery, other relief or any other reduced rate).  An "owner" shall be defined as an individual with any ownership interest or in actual control of the Signatory Employer.  The payment of any Article XX contributions on behalf of such owner shall be conclusive proof that the owner is a JOURNEYPERSON covered under this Trade Agreement and will subject the Signatory Employer to liability hereunder for such owner.

## WAGES

**Art. III. Sec. 1.** - The Employers agree that it is in the interest of all to utilize the prevailing rate. The prevailing wage rates for JOURNEYPERSONS covered under this Trade Agreement, but not wallcoverers or glaziers (refer to wallcoverers and glaziers addenda), shall be as follows:

| | |
|---|---|
| 2019-2020 | $2.22 |
| 2020-2021 | $2.22 |
| 2021-2022 | $2.10 |
| 2022-2023 | $2.22 |
| 2023-2024 | $2.10 |

The Parties agree that the first year's painter's raise will be allocated as follows:

| | |
|---|---|
| H.W. | $0.25 |
| OMA | $0.10 |
| FTI | $0.10 |
| VAC | $0.75 |
| Annuity | $0.52 |
| Wage | $0.50 |

Painters Spray, Scaffold, Motorized Manlifts, Décor & Sandblast Rate          5/1/2019-4/30/2020

| | Base Rate | Overtime Rate |
|---|---|---|
| Wages:* | 46.00 | 69.00 |
| H&W | 11.22 | 11.22 |
| Pension | 10.20 | 10.20 |
| Annuity | 5.52 | 8.28 |
| Vacation* | 5.00 | 7.50 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUBAT | 0.10 | 0.10 |

6



| | | |
|---|---|---|
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 33.19 | 38.45 |
| Total Taxable* | 51.20 | 76.70 |
| Dues Checkoff | 2.30 | 3.45 |
| 1 Hr | 35.49 | 41.90 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year but no later than 30 days before the effective date of that year's economic package increase  Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny.

**Art. III. Sec. 2.** - Where the building owner and/or building manager has put into the building rules and regulations that it will utilize members of the Association of Master Painters, there shall be no overtime for shift work on projects where the total square feet of the project is less than 50% of the building's total square feet or there are no more than three (3) trades working on the project or the project entails the alteration of retail locations including, without limitation, bank branches and retail stores.  On all such "Interior Construction" projects, the first shift shall start between 6 a.m. and 9 a.m., absent a change in times in accordance with this Agreement. The second shift shall start after the end of the first shift and the third shift shall start after the second shift, subject to different times necessitated by the Contractor's phasing plans on specific projects.

**Art. III. Sec. 3.** - Drywall Finishing (where applicable). The prevailing wages of Drywall Tapers and Painters shall be as follows:

| Painters Base Rate | 5/1/2019-4/30/2020 | |
|---|---|---|
| | Base Rate | Overtime Rate |
| Wages:* | 43.00 | 64.50 |
| H&W | 11.22 | 11.22 |
| Pension | 10.20 | 10.20 |
| Annuity | 5.52 | 8.28 |
| Vacation* | 5.00 | 7.50 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUBAT | 0.10 | 0.10 |
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |



| | | |
|---|---|---|
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 33.19 | 38.45 |
| Total Taxable* | 48.20 | 72.20 |
| Dues Checkoff | 2.17 | 3.25 |
| 1 Hr | 35.36 | 41.70 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year, but no later than 30 days before the effective date of that year's economic package increase. Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny.

**Art. III. Sec. 4. -** The Union will allocate the economic package set forth in Art. III Sec. 1 to wages and benefits in a timely manner for each year of the Agreement, but no later than 30 days before the effective date of that year's economic package increase,. Employees shall receive a wage increase in at least 2019-2020. The Union agrees to allocate $0.78 per hour from the wage and benefit increases set forth in Art. III Sec. 1 for the 80% rates into the pension fund by December 31, 2021 for the Funding Improvement Plan (FIP). The Union also agrees to allocate $1.78 per hour from the wage and benefit increases set forth in Art. III Sec. 1 for the Paperhangers into the pension fund by December 31, 2021 for the FIP.

**Art. III. Sec. 5. -** The Parties hereby expressly waive city and state legislation regarding paid time off, including the New York City Earned Sick and Safe Time Act and any potential city, state, and/or federal legislation to guarantee a certain vacation benefit to employees that exceeds or is different from the benefit provided in this Agreement. Further, the Parties agree and acknowledge that this Agreement provides benefits comparable to those provided by the New York City Earned Sick and Safe Time Act. The Parties also agree and acknowledge that this Agreement will provide benefits comparable to those provided by any new or potential city, state, and/or federal vacation benefit legislation to employees covered by this Agreement. To the extent any new or potential vacation benefit legislation does not permit the Parties to waive the legislation's provisions, the Parties agree to a limited reopener to discuss conforming this Agreement to the legislation in a manner that is cost-neutral to the Employers. If any of the waivers included in this paragraph are deemed ineffective or invalid (in whole or part) by a court or other body, or the waivers are ineffective or invalid for any other reason, the Parties agree to replace this paragraph with appropriate language to waive the provisions of the applicable legislation.

**Art. III. Sec. 6. -** Wallcovering.

(a) Wages, fringe benefits and work rules applicable specifically to wallcoverers are contained in the Wallcoverers' Price List set forth in Article XXVII of this Trade Agreement.

8

(b) Wages for wallcovering shall be paid weekly directly to the Wallcoverers performing the work and to no other person.

(c) Wallcoverers are employees and shall be entitled to the benefits required by federal and state laws and all other benefits included in this Trade Agreement.

**Art. III. Sec. 7.** - Decorating.  Any JOURNEYPERSON who performs the work of decorating shall be paid as per Article III, Section 1.  It is expressly understood that decorating work shall consist of designing, ornaments, flowers and figures, stenciling, fresco painting, marbleizing, graining, decorative stenciling, glazing, and the application of gold, silver, metal leafing, encaustic finishes and graphics.

**Art. III. Sec. 8.** - Show Up Time.  Employees who are not put to work after having been instructed to come to work shall be paid for four (4) hours, except when they are not put to work because of an act of God or other circumstances beyond their Employer's control.

**Art. III. Sec. 9.** - Layoffs.

(a)  JOURNEYPERSONS laid off shall be paid the full day's wages if laid off during the day, except when the lay-off is caused by weather conditions.

(b)  JOURNEYPERSONS laid off shall be paid their wages one-half hour before quitting time, and fringe benefits must follow within the next forty-eight (48) hours.

(c) Should any person referred for employment be terminated for just cause, his or her referral privileges shall be suspended for two weeks. Should the same individual be terminated for cause a second time within a twenty-four (24) month period, his or her referral hall privileges shall be suspended for two months. Should the same individual be terminated for cause a third time within a twenty-four (24) month period, his or her referral privileges shall be suspended indefinitely.

(d) A termination shall not be considered as "for cause" for purpose of this provision if the person referred for employment has filed a grievance challenging the propriety of his or her termination, unless and until the grievance is resolved in a manner that affirms the termination for cause. For the purpose of this provision, a decision of the District Council Joint Trade Board and/or an arbitrator shall be final and binding.

(e) The provisions in subsections (c) and (d) notwithstanding, a Termination Review Committee, composed of the members of the District Council Joint Trade Board may, upon written request of the applicant, vacate or reduce the period of suspension should the Committee determine, following inquiry or investigation, in its sole and complete discretion, that equity requires such action.

(f) A program shall be offered by the District Council Apprenticeship Program for advanced or upgraded journeyperson training for all journeypersons working under this Agreement. Journeypersons shall be required to take such courses.

(g) In cases where the terminations resulted strictly from lack of skills, the District Council Joint Trade Board may require the member to attend journeyperson upgrade training classes.

9

**Art. III. Sec. 10.** - Foremen.

(a)  For each day of work on which there are five (5) or more JOURNEYPERSONS on a job, including the foreman, the foreman shall receive one (1) hour's pay in addition to the regular wages.

(b)  All foremen shall be required to attend classroom instruction on O.S.H.A. rules and regulations.  The classroom instruction will be provided through the Union.

(c)  No foreman shall be paid the foreman's rate of pay unless he/she has complied with the foregoing instructional requirement.

(d)  For the purpose of this section, a foreman is a JOURNEYPERSON so designated by his/her Employer who is paid eight (8) hours pay for a seven (7) hour day.

(e)  All foremen shall be bargaining unit employees designated by the Employer and shall for all purposes be agents solely of the Employer.  No foreman shall be made nor shall be deemed to be an agent of the Union.

## COST OF LIVING ADJUSTMENT

**Art. III. Sec. 11.** - Cost of Living Increase. Shall include all JOURNEYPERSONS and apprentices covered by this Trade Agreement.

**Art. III. Sec. 11(A).**  - Effective Dates. Cost of Living wage adjustments shall be made effective at 12 month anniversary date intervals from the effective date of this Agreement until the expiration date of this Agreement.

**Art. III. Sec. 11(B).** - Basis for Adjustment. The amount of the cost-of-living adjustment shall be determined and redetermined as provided in (C) below on the basis of the official New York City Consumer Price Index for Urban Wage Earners and Clerical Workers (including single workers) published by the Bureau of Labor Statistics, US Department of Labor (1967=100) and referred to herein as the index.

**Art. III. Sec. 11(C).** - Amount of Allowance. The amount of the cost-of-living adjustment shall be computed as follows: April 1, 2020, April 1, 2021, April 1, 2022, April 1, 2023, and April 1, 2024  the most recent and available (i.e., March) index number shall be compared to the Index number 12 months prior and that a percent change shall be applied to all wage rates on May 1, 2020, May 1, 2021, May 1, 2022, and May 1, 2023. The percent change shall be compared to the Index number 12 months prior and the percent change computed minus 6.5% shall be applied to all wage rates on May 1, 2020, on all wage rates in the Schedule A classification of Art. III. Sec. 1 and on May 1, 2021, the percent change as arrived at by Index number 12 month prior minus 6.5% shall be applied to all wage rates in the schedule A classification of Art. III. Sec. 1; and on May 1, 2022, the percent change as arrived at by Index number 12 month prior minus 6.5% shall be applied to all wage rates in the schedule A classification of Art. III. Sec. 1; and on May 1, 2023, the percent change as arrived at by Index number 12 month prior minus 6.5% shall be applied to all wage rates in the schedule A classification of Art. III. Sec. 1.



EXAMPLE: On July 1, 1975, the Bureau of Labor Statistics will publish their May index number on or about June 20, 1975. This May index number for New York City will be compared with the May index number for 1974 which was 152.5. Assuming that the index number of May, 1975 is 164.7. A percentage change is calculated by dividing the 164.7 by 152.5, which yields an 8.0 percent increase. According to the attached cost of living clause, Section. C above, 6.5% would be deducted from this, and the 1.5% percentage increase remaining would apply to the wage rate section of the agreement and increase the rate accordingly.

## WORKING CONDITIONS

**Art. IV. Sec. 1(A).** - Standard Work Week. The regular time shall consist of thirty-five (35) hours per week divided into five (5) work days (from Monday to Friday inclusive) of seven (7) hours each.   The start time each workday may be anytime from 6:00 a.m. to 9:00 a.m. with a half-hour for lunch four hours after the start time.   Start times must be registered prior to the commencement of a job.   Any job wishing to have a one (1) hour lunch period shall request special permission from the Union before instituting this procedure.

**Art. IV Sec. 1(B).** - A JOURNEYPERSON shall be permitted to take a ten minute rest period between 9:00 a.m. - 10:00 a.m. for coffee time. The timing of the break shall be at the discretion of the Employer provided the JOURNEYPERSON does not leave the work site as long as coffee is available.

**Art. IV Sec. 1(C).** - In Nassau and Suffolk Counties, the morning break will be 15 minutes between the hours of 9:00 a.m. to 10:00 a.m. The employees will be permitted to sit and have coffee and a meal at their discretion not to exceed 15 minutes.

## OVERTIME AND OVERTIME PERMITS

**Art. IV Sec. 2(A).** - All work outside of the standard work week as set forth in Art. IV. Sec.1(A), or on Holidays as defined below, shall be considered as overtime and paid for at the rate of time and one-half of the regular rate for wages.   Employers are permitted to use straight-time for second shift work with prior permission of Union which shall not be unreasonably withheld. With respect to fringe benefits for overtime work, an Overtime voucher consisting of the components of a regular straight-time voucher plus an additional half (½) annuity payment and an additional half (½) supplemental vacation payment only shall be purchased.  However, no overtime work shall be permitted without the Union's permission.

**Art. IV. Sec. 2(B).** - Subject to Article IV. Sec. 2(C), below, overtime permits shall be granted for hours of work performed outside the Standard Work Week, and all work performed on Holidays.  The Association Employer shall obtain an overtime permit from the Union at least forty-eight (48) hours in advance, whenever possible.

**Art. IV. Sec. 2(C).** - Where the building owner and/or building manager has put into the building rules and regulations that it will only utilize members of the Association of Master Painters, there shall be no overtime for shift work on projects where the total square feet of the project is less than 50% of the building's total square feet or there are no more than three (3) trades working on the project or the project entails the alteration of retail locations including, without limitation, bank branches and retail stores.  On all such "Interior Construction" projects,

11

the first shift shall start between 6 a.m. and 9 a.m., absent a change in times in accordance with this Agreement. The second shift shall start after the end of the first shift and the third shift shall start after the second shift, subject to different times necessitated by the Contractor's phasing plans on specific projects.

**Art. IV. Sec. 2(D).** - During the course of a year, all JOURNEYPERSONS in the shop shall be given an equal share of all overtime work whenever possible, and the assignment of such work shall be done in consultation with the Union.

**Art. IV. Sec. 2(E).** - All work performed on New Year's Day, Memorial Day, President's Day, Independence Day, Labor Day, Thanksgiving Day, the Day after Thanksgiving and Christmas Day, and all work performed on new construction and alteration work, outside regular hours, shall be considered overtime work. Upon an Employer demonstrating special circumstances, employees can work on Labor Day. If any of the holidays herein are designated by federal law to be celebrated on a day other than that on which they regularly fall, then for the purpose of this Trade Agreement the holiday shall be celebrated on the day set by said federal law with the same force and effect as if the day on which the holiday is celebrated was actually the holiday date. Any employee may individually elect to observe Martin Luther King, Jr. Day and shall be allowed the day off without penalty or compensation. The Sunday preceding Labor Day of each year shall be set aside as Memorial Sunday, in tribute to those brothers and sisters who have passed away.

**Art. IV. Sec. 2(F).** - Overtime Violations. In the event the Joint Trade Committee shall find an Employer in violation of the overtime provisions of this Trade Agreement, excluding the failure to secure an overtime permit, it may authorize the Union to place fifty percent (50%) of the overtime workers on the Employer's job for the period of one (1) year. Further, during the six (6) months following such violation, the Joint Trade Committee may require that the overtime compensation due to the employees be paid in the form of a separate check payable to each employee for the full overtime compensation which is paid directly to the employee.

## ASSOCIATION – UNION COMMUNICATION

**Art. V. Sec. 1.** - When the Association notifies the Union of the presence on a job of a non-union painting contractor working in the Trades, the Union shall respond to the Association within forty-eight (48) hours of receipt of the notification; provided, that the Association's notification is in writing and includes the best available address of the job in question.

## OUT OF JURISDICTION WORK

**Art. VI. Sec. 1.** - Out of Jurisdiction Work. The Contractor or the Employer party to this Agreement, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from among the residents of the area where the work is performed, or from among persons who are employed the greater percentage of their time in such area; any others shall be employed only from the Employer's home area. It is further provided that these employees must be qualified to meet job requirements.

12



## JURISDICTIONAL WORK RULES

**Art. VI. Sec. 2.** - Out of Jurisdiction Work. The Contractor or the Employer party to this Agreement, when engaged in work outside the geographical jurisdiction of the Union party to this Agreement, shall employ not less than fifty percent (50%) of the workers employed on such work from the IUPAT District Council or Local Union of the area where the work is performed.

The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to this agreement, comply with all of the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievances set forth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the Employer shall perform such work in accordance with this agreement; and provided further that as to employees employed by such Employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such employees. In situations covered by the last provision fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents, and the difference between the wages and benefit contributions required by the away funds and the home funds, if any, shall be paid to the employees as additional wages. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts.

**Art. VI. Sec. 3.** - Out of Town Expenses. On all out-of-town jobs, the JOURNEYPERSON shall be provided with transportation by his/her Employer. Commuting time in excess of one (1) hour shall be paid for at the regular wage rate, but shall not exceed eight (8) hours in every twenty-four (24) hour period. A JOURNEYPERSON who commutes out of town at night shall not be paid for such commuting time, but sleeping accommodations and meals shall be provided. On all work performed in (a) the five Counties of New York City; (b) Westchester and Putnam Counties; and (c) Nassau and Suffolk Counties, fifty percent (50%) of all manpower up to 4 workers must come from the local unions in the respective area.

**Art. VI. Sec. 4.** - Employees required to remain out-of-town overnight or longer shall be paid one (1) hour additional pay per day and an allowance of not less than $100.00 per day for room and board, unless his/her Employer provides equivalent room and board acceptable to the employee. The Employer must submit receipts for any reimbursements paid by check or cash.

**Art. VI. Sec. 5.** - Any Bargaining Unit member required by his/her Employer to use his/her own automobiles for work outside the Union's jurisdiction shall be reimbursed at the rate of not less than the applicable IRS standard reimbursement per mile for expenses.



## APPRENTICE REGULATIONS

**Art. VII. Sec. 1. -** The wage rates for all apprentices shall be based upon JOURNEYPERSON wages provided in Articles III and XXVII, and shall be as follows:

| Painters 1st Year Apprentice | 5/1/2019-4/30/2020 | |
|---|---|---|
| | Base Rate | Overtime Rate |
| Wages:* | 17.20 | 25.80 |
| H&W | 11.22 | 11.22 |
| Pension | 2.29 | 2.29 |
| Annuity | | |
| Vacation* | 0.99 | 1.49 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUPAT | 0.10 | 0.10 |
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 15.75 | 16.25 |
| Total Taxable* | 18.39 | 27.49 |
| Dues Checkoff | 0.83 | 1.24 |
| 1 Hr | 16.58 | 17.49 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year, but no later than 30 days before the effective date of that year's economic package increase.  Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny.

| Painters 2nd Year Apprentice | 5/1/2019-4/30/2020 | |
|---|---|---|
| | Base Rate | Overtime Rate |
| Wages:* | 21.50 | 32.25 |
| H&W | 11.22 | 11.22 |
| Pension | 4.30 | 4.30 |
| Annuity | 1.00 | 1.50 |
| Vacation* | 2.32 | 3.48 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUPAT | 0.10 | 0.10 |
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 20.09 | 21.75 |

14



| | | |
|---|---|---|
| Total Taxable* | 24.02 | 35.93 |
| Dues Checkoff | 1.08 | 1.62 |
| 1 Hr | 21.17 | 23.37 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year but no later than 30 days before the effective date of that year's economic package increase.  Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny..

| Painters 3rd Year Apprentice | 5/1/2019-4/30/2020 | |
|---|---|---|
| | Base Rate | Overtime Rate |
| Wages:* | 25.80 | 38,70 |
| H&W | 11.22 | 11.22 |
| Pension | 5.30 | 5.30 |
| Annuity | 2.60 | 3.90 |
| Vacation* | 3.12 | 4.68 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUPAT | 0.10 | 0.10 |
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 23.49 | 26.35 |
| Total Taxable* | 29.12 | 43.58 |
| Dues Checkoff | 1.31 | 1.96 |
| 1 Hr | 24.80 | 28.31 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year, but no later than 30 days before the effective date of that year's economic package increase.  Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny..

| Painters 4th Year Apprentice | 5/1/2019-4/30/2020 | |
|---|---|---|
| | Base Rate | Overtime Rate |
| Wages:* | 34.40 | 51.60 |
| H&W | 11.22 | 11.22 |
| Pension | 8.64 | 8.64 |
| Annuity | 4.40 | 6.60 |
| Vacation* | 4.35 | 6.53 |
| JATF-DC9 | 0.45 | 0.45 |
| JATF-IUPAT | 0.10 | 0.10 |

15



| | | |
|---|---|---|
| LMP | 0.10 | 0.10 |
| PAT* | 0.05 | 0.05 |
| O/MA* | 0.15 | 0.15 |
| Promo | 0.40 | 0.40 |
| Total Benefit Package | 29.86 | 34.24 |
| Total Taxable* | 38.95 | 58.33 |
| Dues Checkoff | 1.75 | 2.62 |
| 1 Hr | 31.61 | 36.86 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year, but no later than 30 days before the effective date of that year's economic package increase. Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny.

**Art. VII. Sec. 2. -** All apprentices shall be indentured for a four (4) year apprenticeship. A year shall be completed upon performance by the apprentice of 1500 hours of on the job training with Signatory Employers and 144 hours of instruction conducted by the District Council No. 9 Joint Apprenticeship and Training Fund. Upon completion of the apprentice program, such apprentice shall be considered a full-fledged JOURNEYPERSON and shall receive full JOURNEYPERSON wages, provided the apprentice complied with the rules of the Joint Apprentice Committee, as defined in Article VII, Section 8.

**Art. VII. Sec. 3. -** Employers shall not require that an apprentice work when the apprentice is required to attend Apprentice Training School unless the Employer has received permission in advance from the Apprentice Training Coordinator.

**Art. VII. Sec. 4. -** All submitted bills covering wallcoverer apprentices shall state the classification of apprenticeship and the number of hours worked. Bills must be submitted and paid weekly.

**Art. VII. Sec. 5. -** Apprentice Ratio. For the term of this Trade Agreement, the ratio of apprentices to JOURNEYPERSONS must be maintained at one (1) apprentice for every three (3) JOURNEYPERSONS employed per shop.

**Art. VII. Sec. 6. -** Violations. Upon the failure of an Employer to comply with the terms of Sections 4 and 5 above, the Joint Apprentice Committee, after due notice to the Employer, shall designate the appropriate number of apprentices to be employed in the shop.

**Art. VII. Sec. 7. -** No apprentice receiving less than 60% of JOURNEYPERSON wages shall be placed in a shop unless that shop already employs at least one apprentice receiving the 80% rate. This rule may be waived when there are no apprentices available in the category of 80%. No apprentice receiving less than 80% of the JOURNEYPERSON wages shall work by himself on a job.



**Art. VII. Sec. 8.** - The Joint Apprentice Committee shall consist of six (6) members, three of whom shall be designated by the Association of Master Painters & Decorators of New York, Inc. and three shall be designated by the Union. One of the three designated by each party shall include a representative of the wallcoverers craft and another representative will be from the dry wall tapers craft. The Joint Apprentice Committee shall be responsible for the placement and training of apprentices in the Trades as work is available, and in accordance with any rules adopted by the Joint Apprentice Committee. The Joint Apprentice Committee shall meet quarterly to evaluate new products and technologies.

**Art. VII. Sec. 9.** - The conditions of employment of apprentices shall be regulated by the Joint Apprentice Committee, which shall also have the power to formulate regulations for a system of required employment for apprentices including the supervision of apprentices, however, no restrictions shall be placed on the type of work performed or the tools utilized by apprentices. All apprentices shall be bound by the Agreement they sign and by all the rules and regulations of the Joint Apprentice Committee.

**Art. VII. Sec. 10.** - The bargaining Parties direct the trustees of the Joint Apprentice Committee to create a mentor program for apprentices.

**Art. VII. Sec. 11.** - The Parties agree to cooperate in adjusting the apprentice package to comply with all applicable laws.

**Art. VII. Sec. 12.** - There shall be no restrictions on the performance of spraying work by apprentices if the apprentices performing such work are under the supervision of a Journeyman.

**Art. VII. Sec. 13.** - Employers agree to take a more active role in the apprentice program with the goal of improving the program.

## PAYMENT OF WAGES

**Art. VIII. Sec. 1.** - Wages shall be paid on the job, during regular working hours. Payday shall be on Thursday. Wages shall be paid by check or direct deposit. In the event that the payday falls on a holiday, payment shall be made on the day before the holiday. If payment by check is made on a Friday or on the day before a holiday, the employees shall be allowed one half hour off to cash their checks. Work week ending must be on Tuesday. Association Employers who have previously disbursed payroll checks without sufficient funds (one offense) shall be liable for a 20% penalty, or in an amount determined by the Joint Trade Committee. The penalty shall be paid to the employee in addition to the amount for which the check was written.

**Art. VIII. Sec. 2.** - JOURNEYPERSONS and apprentices not paid on the day provided in the preceding Sec.1 shall be paid two (2) hours pay in addition to the wages due them. If the JOURNEYPERSONS and apprentices are not paid by the following Monday at 8:00 a.m., upon notification from the Union to the Association Employer, no JOURNEYPERSON or apprentice shall start work on that job until payment is made in full to all JOURNEYPERSONS and apprentices. In addition to all other sums due them, the JOURNEYPERSONS and apprentices shall not be paid less than a full day's wages for that day.

**Art. VIII. Sec. 3.** - Not more than two day's pay shall be held back.

17



**Art. VIII. Sec. 4. -** Wage Statements.  At the time of payment of wages, the Association Employer shall give to each Employee a statement in ink or indelible pencil showing the amount of each and every deduction from the wages, including administrative dues check-off as provided in Article XX, section 10.  The statement shall also show the employee's Social Security number and signatory Association Employer's name and employer identification number or state that it is issued by a payroll company on the signatory Employer name's behalf.

**Art. VIII. Sec. 5. -** Time sheets may be provided by the Association Employer.  If provided, time sheets shall be filled out by each JOURNEYPERSON and apprentice, upon request of the Association Employer.

## JOB STEWARDS

**Art. IX. Sec. 1(A). -** Job Stewards.  On any job employing two (2) or more employees, the Union shall select a Job Steward from among the employees working on the job.  The selected Job Steward must be a qualified Journeyman and be certified through the Union's Steward's course and all employees are eligible to attend the course and become certified.  The Union commits to continuing to implement and improve an accessible and appropriate training process to create more skilled Steward candidates.  Once the Job Steward is selected, he shall remain on the job as the second to last man on the job.  All Employers outside the jurisdiction of this District Council must have a Job Steward from the Union Hall, on each job. The qualifications of steward are in the DC 9 By-Laws.

**Art. IX. Sec. 1(B). -**  The Parties reaffirm their commitment that all stewards will solely be working stewards.  Unqualified or unproductive job stewards may be removed, subject to review by the Joint Trade Committee, which shall convene a hearing within 24 hours.

**Art. IX. Sec. 1(C).**

(a) If the Union files a grievance in accordance with Article XIII of this Trade Agreement for (i) the use of non-union employees on the job; or (ii) non-payment of wages or fringe benefit vouchers or shortages thereof, the Joint Trade Committee shall conduct a hearing within forty-eight (48) hours.  All work shall continue on said job pending the hearing. No postponements of the hearing shall be granted under any circumstances.  If the hearing does not take place within 48 hours because of management's unavailability, the Union reserves the right to stop the job.

(b) If the Joint Trade Committee finds that an Employer has committed either of the violations set forth in sub-section (a) above, the remedies shall be as follows:

      (i)     First violation for use of non-Union employee(s):  the Union will appoint a job steward from the Union Hall on all the Employer's jobs employing more than one (1) employee for a period of one year.

      (ii)    Second violation for use of non-Union employee(s): the Union will appoint a job steward from the Union Hall on all of the Employer's jobs employing more than one (1) employee for the life of this Trade Agreement.

18



(iii)    First violation for non-payment or shortage of wages: the Union will appoint a job steward from the Union Hall on all the Employer's jobs employing more than one (1) employee for a period of one year.

(iv)    Second violation for non-payment or shortage of wages: the Union will appoint a job steward from the Union Hall on all of the Employer's jobs employing more than one (1) employee for the life of this Trade Agreement.

(v)    First violation for non-payment of fringe benefit vouchers or shortages thereof for all employees on the job: The Union will appoint a job steward from the Union Hall for the duration of the job on which the violation was committed.

(vi)    Second violation for non-payment of fringe benefit vouchers or shortages thereof for all employees on the job: The Union will appoint a job steward from the Union Hall on all of the Employer's jobs employing more than one (1) employee for a period of one year.

(vii)    In the event that a job steward has been removed from a job, the placed job steward will be of the same status (e.g., journeyman, apprentice) as the job steward being removed.

(c) In the event that there is an individual voucher or wage shortage for an employee working on a job, the Union will notify the Employer in writing and demand that the employee be made whole. The Employer will then have forty-eight (48) hours from verified receipt of the Union's written demand to make the employee whole. If the Employer fails to make the employee whole within forty-eight (48) hours, the Union may remedy the violation in accordance with sub-sections (a) and (b) above.

(d) No Retaliation. There shall be no retaliation by the Employer against any employee who reports to the Union any alleged violation of this Trade Agreement. The employee must report the violation to the Union within fourteen (14) days of the date of the occurrence of the violation. The Union must file a grievance on said violation in accordance with Article XIII of this Trade Agreement within thirty (30) days of the date it receives the complaint from the employee. The grievance and arbitration procedures of Article XIII of the Trade Agreement must be exhausted before the employee may individually commence an action in any other forum to remedy any alleged violation of this Trade Agreement.


## SHOP STEWARDS

**Art. IX. Sec. 2(A).** - Shop Stewards. All new Employers who become Parties to this Agreement shall have a shop steward appointed by the Union. In shops having the following annual payroll or less, there shall be a Shop Steward who shall be placed solely by the Union:

|  |  |
|---|---|
| As of January 1, 2019: | $1,950,000.00 |
| As of January 1, 2020: | $2,050,000.00 |



19

| | |
|---|---|
| As of January 1, 2021: | $2,150,000.00 |
| As of January 1, 2022: | $2,250,000.00 |
| As of January 1, 2023: | $2,350,000.00 |

The annual payroll amounts set forth above shall be based on the calendar year immediately preceding each date set forth above. The annual payroll amounts shall be based on bargaining unit employees only.

The Union shall appoint the Shop Steward from the shop, as long as there is an individual in the shop with the proper qualifications. The selected Shop Steward must be a qualified Journeyman and be certified through the Union's Steward's course and all employees are eligible to attend the course and become certified. The Union hereby commits to continuing to implement and improve an accessible and appropriate training process to create more skilled Shop Steward candidates.

**Art. IX. Sec. 2(B).** - The Parties reaffirm their commitment that all stewards will solely be working stewards. Unqualified or unproductive shop stewards may be removed, subject to review by the Joint Trade Committee, which shall convene a hearing within 24 hours.

**Art. IX. Sec. 2(C).** - Duties of the Shop Steward shall be as follows:

(i) The duties of a Steward shall consist of examining the dues books, work cards, and reviewing and reporting for voucher program compliance of the Journeypersons and Apprentices on the job and enforcing Union conditions and proper working conditions.

(ii) It is the responsibility of every Employer to submit weekly reports provided by the Union and designated or called "Shop Steward Reports". Failure to submit such reports will result in a fine of five hundred dollars ($500) for each missing report.

**Art. IX. Sec. 2(D).** - If any Steward is paid and receives any money or other things of value over and above his regular JOURNEYPERSONS wages for work actually performed in accordance with the provisions of this Agreement, the Joint Trade Board shall impose appropriate penalties upon both Employer and the Steward. All the JOURNEYPERSONS on the job shall receive the same wages as the Steward has received during the period of his violation, and the Steward shall be removed from the Steward List for a period of at least five (5) years.

## TIME FOR STEWARDS' DUTIES

**Art. IX. Sec. 3(A).** - A Steward shall perform a fair day's work as a working JOURNEYPERSON.

**Art. IX. Sec. 3(B).** - No Steward shall be discriminated against for the proper performance of their duties. Said Steward shall be allowed for the performance of their Steward's duties not less than one hour per day, on jobs having five or more men.



**STEWARDS' COMMITTEE**

**Art. IX. Sec. 4.** - There shall be a Stewards' Committee composed of two representatives appointed by the Associations and two representatives appointed by the Union.

**Art. IX. Sec. 5.** - The Stewards' Committee shall hear Employer complaints against Stewards on charges of misconduct or Union complaints of abuse of Steward's rights and shall meet within 48 hours. The Steward may not be suspended pending the disposition of charges if such failure is due to the absence of the Employer's representatives. He may be so suspended, however, if the Committee's failure to meet is due to the absence of the Union's representatives.  A quorum of the Committee shall consist of one representative from each side and its finding shall be decided by unit vote.

**Art. IX. Sec. 6.** - Deadlock. In the event the Stewards' Committee deadlocks or otherwise fails to decide any complaint, either party may, within thirty days, refer the complaint to the Joint Trade Board for final and binding decision, in accordance with the rules and regulations of the Board.

**Art. IX. Sec. 7.** - The Parties agree to establish a joint labor-management committee, the purpose of which is to identify violations of this Trade Agreement by, including but not limited to, reviewing shop steward reports and remittance reports.  The committee will meet on a regular basis.  The committee will hire one full-time staff person whose function will be, among other responsibilities to be determined by the committee, to monitor shop steward reports and remittance reports and report to the committee any potential violations of the Trade Agreement for further action by the committee, and to make site visits as necessary to ascertain whether the Trade Agreement is being violated.

**JOB REGISTRATION**

**Art. X. Sec. 1.** - Registration of Jobs.

(a)      Every Association Employer must register with the Union prior to the commencement of any unscheduled job, on a written, numerically ordered job registration form that shall be provided by the Union.  The completed registration form shall state the exact location and nature of the job or operation.  The Association Employer on a scheduled job or operation shall, within twenty-four (24) hours after the commencement of the job or operation, file with the Union a written statement of the exact location and nature of the job or operation, and shall not thereafter be required to make any further report with respect to such job or operation within that calendar year.  In the event that any work on said job or operation is done by any other Employer, such other Association Employer shall, within forty-eight (48) hours after commencement of the work, file with the Union a written statement of the work to be performed by the other Employer. All exterior work shall be reported each time, prior to starting the job.  The number of registrations filed must coincide with dates of the work performed.

(b)      All job registrations from all areas under the jurisdiction of the Union must be sent by electronic mail to jobregistration@dc9.net, or mailed by overnight express to the Union's offices at 45 West 14th Street, New York, NY 10011, prior to commencement of any job or operation

21



requiring registration.  Such job registrations shall be shared within the Union on a need to know basis, and will not be shared externally except to the Executive Director of the Association.

(c)      All overtime registrations must be sent by electronic mail to jobregistration@dc9.net, or mailed by overnight express to the Union's offices at 45 West 14th Street, New York, NY 10011, at least forty-eight (48) hours prior to the commencement of overtime, whenever possible.

Failure to register all jobs on a timely basis will result in fines as established and amended by the Joint Trade Committee.

(d)      Scheduled buildings shall be registered when work commences and thereafter re-registered with the Union on January 1 of each year.

(e)      Every Association Employer shall report the loss of any scheduled building to the Union in writing within twenty-four (24) hours.

## UNION REPRESENTATIVES

**Art. XI. Sec. 1.** - Any Union Representatives and/or Union employee may visit all jobs and shops for the purpose of ascertaining compliance with the provisions of this Trade Agreement. Association Employers will make their best efforts to gain access to buildings where they are working for Union Representatives and/or Union employee to investigate compliance with the provisions of this Trade Agreement.

## GRIEVANCES AND DISPUTES

**Art. XII. Sec. 1.** - The Employee Grievance Procedure shall be as follows:

(a)      Foreman Review.  An employee's grievance shall first be presented by his Steward to the foreman. If no satisfaction is reached within twenty-four (24) hours, that matter shall be referred to the Association Employer and the Union.

(b)      Steward's Review.  The Steward shall review the grievances with the supervisor or any other representative designated by the Association Employer.  If a satisfactory settlement is not reached within twenty-four (24) hours, the matter shall then be reduced to writing and referred to the Joint Trade Committee for hearing and decision pursuant to Article XIII of this Trade Agreement.

## JOINT TRADE COMMITTEE & JOINT TRADE BOARD

**Art. XIII. Sec. 1.** - Joint Trade Committee.

The Joint Trade Committee is hereby created, for the Union and Employers covered by this Trade Agreement.  The Joint Trade Committee shall consist of not less than two (2) Association

representatives and two (2) Union representatives. The Association representatives shall be appointed by the Association of Master Painters and Decorators of New York, Inc. which shall select such representatives for the Joint Trade Committee except in cases where a drywall taping contractor is a respondent in which case the Drywall Taping Contractors' Association of Greater New York shall appoint one of the Association members of the Joint Trade Committee.

**Art. XIII. Sec. 2.** - Joint Trade Board.

A Joint Trade Board is hereby created, which shall be comprised of the President of the Association of Master Painters and Decorators of New York, Inc., and the Business Manager / Secretary-Treasurer of the Union, or representatives respectively designated by each of them.

**Art. XIII. Sec. 3.** - Jurisdiction of the Joint Trade Committee and Joint Trade Board.

(a)      The Joint Trade Committee and Joint Trade Board are empowered to hear and decide in arbitration as hereinafter provided, all grievances and disputes which arise between the Parties as to the interpretation or application of this Trade Agreement and to make such awards or assess remedies, damages and penalties for violations of this Trade Agreement. The Joint Trade Committee and Joint Trade Board shall have the authority to issue awards with respect to all grievances and disputes in any manner which they deem reasonable. The Joint Trade Committee and the Joint Trade Board shall have all powers necessary to remedy complaints brought before them including, but not limited to (i) wages and contributions owed; (ii) liquidated damages; (iii) interest on monies due; (iv) attorneys' and auditors' fees; and (v) the cost and expenses of arbitration; (vi) failure to allow audits; (vii) alter ego/single employer issues; (viii) subcontracting issues; and (ix) any fines and/or penalties imposed.

(b)      All grievances or disputes against members of either party to this Trade Agreement, for alleged violations of the same, which have not been adjudicated by the Joint Trade Committee for any reason, shall be adjudicated by the Joint Trade Board.

(c)      The Joint Trade Committee may, but is not required to, include in their award against a signatory Employer, and any signatory or non-signatory alter-ego thereof, any and all delinquent fringe benefit contributions plus interest, liquidated damages, auditors' fees, attorneys' fees and cost owed by said Employer(s). The decisions, findings and awards of the Joint Trade Committee shall be final and binding upon the signatory Employer and the Union, but not upon the Funds. The Joint Trade Committee may enforce the decision, findings and awards or may refer their award for fringe benefit contributions to the Funds for enforcement and collection. Enforcement of any award issued by the Joint Trade Committee shall not be considered a waiver by the Funds (or an election of remedies by the Funds) of the right to collect any fringe benefit contributions, interest, liquidated damages or late charges, for any time period, owed by the signatory Employer to the Funds and the Funds may pursue any and all collection efforts, including but not limited to, the filing for a lawsuit in Court, in order to collect any fringe benefit contributions, interest, liquidated damages or late charges owed by the signatory Employer, and any signatory or non-signatory alter-ego thereof,  to the Funds. The Joint Trade Board shall have access to all appropriate benefit information to the extent permitted by state, federal, and local law. Furthermore, the Joint Trade Board members may be required to sign nondisclosure agreements in connection with access to such benefit information. The Joint Trade Committee or Joint Trade Board, upon issuance of a finding of delinquency, may also issue an award requiring the

payment of the fines set forth in Article XIII, Section 11, Violation 9 and to order the remedies set forth in Article IX.

(d)     The Joint Trade Committee and the Joint Trade Board are also empowered to (i) issue interpretive rules or other rules and regulations as they deem necessary to give full force and effect to their decisions; (ii) conduct audits of Association Employers' records; (iii) upon request of both Parties, recommend amendments or changes to this Trade Agreement; and (iv) appoint such persons or committees as may be necessary to aid in the performance of their duties.

(e)     The Joint Trade Board shall address issues or disputes arising out of any market recovery, organizing or other relief provisions in this Agreement or the Market Recovery and Other Relief Provisions Agreement.

**Art. XIII. Sec. 4.** - Procedures.

(a)     The Joint Trade Committee and Joint Trade Board may, when deemed necessary, promulgate amendments and revisions to the rules and regulations set forth in this Article governing their own conduct. The Parties to this Trade Agreement agree to be bound by any such amendments and revisions.

(b)     The Joint Trade Committee and Joint Trade Board shall meet at their discretion.

(c)     When the Joint Trade Committee votes on a question, complaint or finding, the Association and the Union shall each have one (1) vote and these votes shall be equal regardless of the number of representatives present and voting.

(d)     The decisions, findings and award of the Joint Trade Committee and/or the Joint Trade Board shall be final and binding upon the Association Employer and the Union, all members thereof, and all interested Parties.

## RULES AND REGULATIONS

**Art. XIII. Sec 5.**

(a)     Filing of the Demand to Arbitrate a Grievance or Dispute.

(i) A demand to arbitrate a grievance or dispute shall be in writing and shall be filed by mail or hand-delivered to the Joint Trade Committee by either the Union or the Association. Demands also shall be filed by the Union to the Association and by the Association to the Union. The demand shall state the name of the aggrieved party, and the name of the party against whom the grievance or dispute is asserted. The party filing the grievance or dispute shall thereafter be called the complainant. The party against whom the grievance or dispute is asserted shall thereafter be called the respondent.

(ii) Each demand shall set forth only one alleged grievance or dispute in simple and concise form, and shall set forth the basis of the grievance or dispute, with appropriate reference to the Trade Agreement provisions at issue, to the extent known. The demand shall also set forth the date of the particular incident and, if known, the name(s) of the

24



person and/or Association Employer(s) involved.  The demand may also set forth the remedy sought.

(iii) Every demand to arbitrate shall specify the name of the party serving the demand, or of an officer or agent thereof if such party is an association or corporation, and shall state that unless the party served applies to stay the arbitration within twenty (20) days after such service or, in the case of Article IX grievances, 48 hours after such service, he/she shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with, and from asserting in court the bar of a limitation of time.

(b)      Service of the Demand to Arbitrate a Grievance or Dispute and Setting of the Date of Hearing.

(i) Simultaneously with the filing of the demand with the Joint Trade Committee, the complainant will serve a copy of the demand upon the respondent.  Within fourteen (14) days of the filing of the demand, the Joint Trade Committee shall notify the complainant and respondent of the date and time for the hearing of the grievance or dispute before the Joint Trade Committee.  Service upon the respondent of the complainant's demand to arbitrate, and service upon the complainant and respondent by the Joint Trade Committee of the notice of the date of the hearing of the arbitration, shall be by certified mail and return receipt requested, or overnight express mail.  The mailing to an Association Employer shall be made to the Association Employer's address on file with the Union.

(ii) The date set for the hearing by the Joint Trade Committee shall not be less than twenty (20) days, nor more forty-five (45) days, from the date the notice was mailed by the Joint Trade Committee. The Joint Trade Committee may change these time periods at its discretion.

**Art. XIII. Sec. 6. - Respondent.**

The respondent may submit to the Joint Trade Committee and to the complainant a response to the complainant's demand to arbitrate, provided that the response is received by the Joint Trade Committee no less than three (3) days before the date of the hearing fixed in the notice.

**Art. XIII. Sec. 7. - Arbitration Hearings.**

(a)      Representation of the Complainant and Respondent.  The Union as a complainant or respondent shall be represented at the hearing by an officer or representative of the Union authorized by its Secretary-Treasurer to act in such capacity, or by the business representative of the local union having jurisdiction over the geographical area where the incident giving rise to the demand to arbitrate occurred.  An Association Employer as a complainant or respondent, if a corporation, shall be represented at the hearing by an officer thereof, or, if a sole proprietorship, partnership or unincorporated business association, by a principal thereof.  If a complainant or respondent is a member of an Employer association recognized by the Union, it may also be represented at the hearing by a duly authorized member of such association.  A party has the right to be represented at the hearing by legal counsel.

(b)      Hearing procedures.  The arbitration hearing shall be conducted by two (2) chairpersons who shall be members of the Joint Trade Committee, one of whom shall be an Association

representative and the other a Union representative. The grievance or dispute, proof of due service of same and any response thereto by the respondent will be presented at the inception of the hearing. The complainant may present witnesses and other evidence in support of the request, and the respondent may present witnesses in its defense. The respondent and complainant will both have the right of cross-examination. The Joint Trade Committee shall be the judge of the relevance and materiality of the evidence offered, and conformity to the state or federal rules of evidence shall not be necessary. The Joint Trade Committee (and any subsequent arbitrators, i.e. the JTB or AAA, pursuant to this Article) shall also consider any alleged violations of the National Labor Relations Act and apply any statutory remedies, if any, with respect to any violation of the National Labor Relations Act.

(c)     Nature of Hearings. Hearings shall be as informal as may be reasonable and shall be conducted in the manner considered appropriate by the chairpersons. The chairpersons shall have the authority to vary the procedures as they deem necessary in order to insure that each party is afforded a full and fair opportunity to present any and all material and relevant evidence.

(d)     Corroborating Witness. Absent extraordinary circumstances, the Union must produce a corroborating witness (i.e., an individual with firsthand knowledge of the violation) to the Joint Trade Committee in order to meet its burden of proof at a hearing. There shall be no retaliation against any member who provides witness testimony to the Joint Trade Committee.

(e)     Minutes of Proceedings. Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other party and the Joint Trade Committee at least three (3) days in advance of the scheduled hearing date. The requesting party shall pay the cost of the transcript and a copy of same must be made available at no cost to the Joint Trade Committee upon the conclusion of the hearing.

(f)     Postponements. Except as provided in Article IX, Section 1(c) and (a), the Joint Trade Committee may, for good cause shown, postpone any hearing upon the request of a party or upon the Joint Trade Committee's own initiative, and shall also grant such postponement when all of the Parties agree.

(g)     Hearings in the Absence of a Party. The hearing may proceed in the absence of a party or representative who, after due notice, fails to appear or fails to obtain a postponement. A decision and award of the Joint Trade Committee or Joint Trade Board shall not be made solely on the default of a party. The Joint Trade Committee shall require the party who is present to submit such evidence as may be required for the making of a decision.

(h)     Interpretation and Application of Procedures, Rules and Regulations. The Joint Trade Committee and Joint Trade Board shall interpret and apply the above procedures, rules and regulations insofar as they relate to the power and duties of the Joint Trade Committee and the Joint Trade Board, respectively. If an unresolvable difference arises between the Union and Association representatives on the Joint Trade Committee concerning the meaning or application of these procedures, rules and regulations, it shall be resolved and decided by the Joint Trade Board.

**Art. XIII. Sec. 8. - Awards.**



26

(a)     The Joint Trade Committee will, no later than thirty (30) days after the close of the hearing, adjust or dispose of the grievance or dispute by rendering an award which may include the imposition of fines and/or penalties, and any statutory remedies available under the National Labor Relations Act or other applicable Laws and Rules.  The fines or penalties which may be imposed by the Joint Trade Committee are set forth in the schedule of standardized fines which are made a part of this Article as Section 11.  If a demand for arbitration seeks the recovery of wages and/or benefits, the calculation of those wages and benefits shall be presented and determined at the hearing and the total amounts owed shall be reflected in the award.

(b)     In the event the Joint Trade Committee fails to render an award within the time provided in the preceding sub-section (a) or a decision cannot be made due to deadlock of the Joint Trade Committee, the Joint Trade Committee shall submit the grievance or dispute to the Joint Trade Board, and the Joint Trade Board shall render an award.  The failure of the members of the Joint Trade Board to be present at the arbitration hearing before the Joint Trade Committee shall not preclude the issuance of an award by the Joint Trade Board.

(c)     The awards of the Joint Trade Committee and/or the Joint Trade Board, including an award of fines or penalties, shall be final and binding upon the complainant and respondent and all interested parties (except as provided in Article XIII Sec. 3(c)), and judgment may be entered upon the award in accordance with applicable law in any court having jurisdiction thereof.

### Art. XIII. Sec. 9. - Fines and Penalties

(a)     All fines and penalties awarded by the Joint Trade Committee and/or the Joint Trade Board, less the reasonable administrative cost and expenses actually incurred, shall be used to defray the costs of District Council No. 9's enforcement of Joint Trade Committee awards, to advance the industry, to sponsor educational programs for the members in good standing of the Union and their children, to aid and assist in the establishment of programs to increase business activity within the industry and develop and maintain maximum job opportunities for those Union members.

(b)     When a Joint Trade Committee or the Joint Trade Board finds that an Association Employer is guilty of violating the Trade Agreement, the Joint Trade Committee or the Joint Trade Board may, at its discretion, authorize the Union to designate up to fifty percent (50%) of the JOURNEYPERSONS in the employ of such Association Employer for a period not exceeding six (6) months, provided that, with respect to violations of Article IV, the remedies set forth in Article IV, Section 2(F) shall be applicable.

### Art. XIII. Sec. 10. - Protection of Complainants.

No Association Employer shall dismiss any JOURNEYPERSON for giving evidence at an arbitration hearing.  Such person giving evidence or testimony shall have the protection of the Joint Trade Committee and Joint Trade Board.

### Art. XIII. Sec. 11. - Schedule of Fines.



The schedule of fines which shall be in effect for the duration of this Trade Agreement, or until such time as amended by the Joint Trade Board, will be not less than the following:

**Violation 1:**  No Registration
> 1st Offense
>> $1000.00
> 2nd Offense
>> $1500.00
> 3rd Offense
>> $3000.00 within 12 months, plus the Joint Trade Committee has discretion to implement 50% of the men on the job from the Union.
>
> *The Parties agree that the Joint Trade Board has the discretion to hold in abeyance a first offense violation under this section. However, should the same Employer commit a second offense of the same violation, the penalty for any violation held in abeyance will be due in addition to the penalty for the second offense.

**Violation 2:**  No registration and non-union men on the job
> 1st Offense
>> $3000.00 - no registration
>> $4000.00 - each non-union man
> 2nd Offense
>> $4000.00 - no registration, plus
>> $10000.00 for each non-union man, plus the Joint Trade Committee has discretion to implement 50% of the men on the job from the Union.

**Violation 3:**  No overtime permit.
> 1st Offense
>> $1000.00
> 2nd Offense
>> $2000.00
> 3rd Offense
>> $3000.00 within 12 months, plus the Joint Trade Committee has discretion to implement 50% of the men on the job from the Union
>
> *The Parties agree that the Joint Trade Board has the discretion to hold in abeyance a first offense violation under this section. However, should the same Employer commit a second offense of the same violation, the penalty for any violation held in abeyance will be due in addition to the penalty for the second offense.

**Violation 4:**  No overtime permit with non-union man on the job.
> 1st Offense
>> $6000.00 - no permit
>> $3000.00 - each non-union man
> 2nd Offense
>> $10000.00 - no permit
>> $4000.00 - each non-union man

28

3rd Offense
> $12000.00 within 12 months, plus $6000.00 for each nonunion man plus the Joint Trade Committee has discretion to implement 50% of the men on the job from the Union.

**Violation 5:**  Discrimination against Job or Shop Steward or retaliation against "whistleblowers"
1st Offense
> Wages and fringe benefits $2000.00 liquidated damages

**Violation 6:**  Non-Union man
1st Offense
> $4000.00 for each non-union man plus $2000.00 liquidated damages
2nd Offense
> $10000.00 for each non-union man plus $3000.00 liquidated damages plus the Joint Trade Committee has discretion to implement 50% of the men on the job from the Union.

**Violation 7:**  Subcontracting to non-union employer
1st Offense
> Penalty contingent upon size and scope of project plus $6000.00 liquidated damages.

**Violation 8:**  Failure to submit Shop Steward Reports or Remittance Reports
1st Offense
> $1000.00 each missing report.

**Violation 9:**  Failure to pay wages and/or fringe benefits or payment in cash for wages and/or fringe benefits
1st Offense
> Any wages and fringe benefits owed plus liquidated damages in an amount equal to the unpaid (or cash-paid) fringe benefits only, but no less than $4,000.00.

**Violation 10:**  Use of market recovery or other special rate journeyperson(s) on non-market recovery job(s) or other corresponding operation(s).
1st Offense
> Three times the penalty of Violation 6 above and the Joint Trade Committee has the right to suspend or terminate the use of market recovery for a period of time to be determined by the Joint Trade Committee.

Applicable to all violations above:

In addition to the penalty listed above with respect to the violations set forth in Section 11 above, with the exception of violations 1 and 8 (addressed below), if a violation is found the Joint Trade Committee and/or the Joint Trade Board shall direct the Union to appoint a job steward from the Union Hall for the duration of the job.  With respect to violations 1 and 8, in addition to the penalty listed above with respect to the violations set forth in Section 11 above, the Joint Trade Committee and/or the Joint Trade Board may direct the Union to appoint a job

29

steward from the Union Hall for the duration of the job.

**Art. XIII. Sec. 12. - Deadlock or Failure of the Joint Trade Board to Render a Decision.**

If the Joint Trade Board deadlocks or otherwise fails to render an award deciding any grievance or dispute within fourteen (14) days of submission to it by the Joint Trade Committee, either party may, within thirty (30) days of the expiration of said fourteen (14) day period, refer the grievance or dispute to arbitration by filing a written request with the Joint Trade Board, with a copy served upon the opposing party. Upon receipt of such request, the Joint Trade Board shall promptly submit such grievance or dispute to arbitration pursuant to the Labor Arbitration Rules of the American Arbitration Association ("AAA"). The decision of the AAA arbitrator shall be final and binding.

## STRIKES AND LOCKOUTS

**Art. XIV. Sec. 1. -** There shall be no strikes or lockouts in the shops or upon the work of any Association Employer, nor shall the members of the Union collectively leave the job of an Association Employer. The Union reserves its constitutional right not to work with non-union journeypersons. It is further agreed that before the Union removes any JOURNEYPERSON or apprentice from a job site under this reserved right, the Union shall give notice as soon as reasonably possible, but at least twenty-four (24) hours' notice, to the Association Employer, and the Joint Trade Board or the Joint Trade Committee. It is agreed that no support is to be given to a union that has removed its journeypersons in violation of any applicable no-strike clause.

**Art. XIV. Sec. 2. -** Any Association Employer who has been judged by the Joint Trade Board or the Joint Trade Committee to be in violation of this Trade Agreement or guilty of any charge brought against it before the Joint Trade Board or the Joint Trade Committee shall be outside the protection of Art. XIV, Sec. 1, until such time as it is in compliance.

**Art. XIV. Sec. 3. -** If an Association Employer fails to comply with a decision of the Joint Trade Board or a Joint Trade Committee, the Union must order its JOURNEYPERSONS and apprentices to cease work until that Association Employer is in compliance on any and all jobs.

**Art. XIV. Sec. 4. -** Employees covered by this Trade Agreement shall have the right to respect any legal primary picket line validly established by any bona fide labor organization, and the Union has the right to withdraw employees covered by this Trade Agreement whenever the Association Employer is involved in a legitimate primary labor dispute with any bona fide labor organization.

**Art. XIV. Sec. 5. -** For any foreman who receives a minimum of 48 weeks of pay from one Association Employer, District Council No. 9 will, upon written request from that Association Employer, make arrangements so that mandatory picketing by that foreman will not interfere with his or her work schedule. The Association Employer must identify the foremen on its roster at the time of its written request, which must be made during the month of January for that year. In connection with this paragraph only, the Association Employer shall notify the Union in writing if a foreman's status changes.

## SUBCONTRACTS

**Art. XV. Sec. 1. -**

(a) To protect and preserve for the employees covered by this Trade Agreement all work they have performed and all work covered by this Trade Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed that if any Association Employer performs on-site construction work of the type covered by this Trade Agreement, under its own name or the name of another, as a corporation, company, partnership, or other business entity, including a joint venture, wherein the Association Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this Trade Agreement shall be applicable to all such work and shall be responsible for the payment of the benefit contributions when due to the Funds.

(b) Any signatory Employer who contracts work to a signatory sub-contractor or a non-signatory sub-contractor for a particular job, which work is covered under this Trade Agreement shall be responsible for the sub-contractor's delinquent contributions should the sub-contractor fail to remit the benefit contributions when due to the Funds.

**Art. XV. Sec. 2. -** All charges of violations of Section 1 of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Trade Agreement on the handling of grievances and the final and binding resolution of disputes as provided in Articles XII and XIII, with the exception that collection of benefit contributions may alternately be processed by the Funds and the Trustees may bring a lawsuit against the Employer to collect the unpaid benefit contributions plus interest, liquidated damages and fees related thereto. As a remedy for violations of this Article, the Joint Trade Committee, the Joint Trade Board, or AAA Arbitrator shall, at the request of the Union, be able to require an Association Employer (i) to pay to affected employees covered by this Trade Agreement, including registered applicants for employment, the equivalent of wages those employees have lost because of the violations; and (ii) to deposit into the affected Joint Trust Funds to which this Trade Agreement requires contributions any delinquent contributions that resulted from the violations. The Joint Trade Committee or Joint Trade Board or AAA Arbitrator shall also be able to provide any other appropriate remedies, whether provided by law or this Trade Agreement. The Union shall enforce a decision of the Joint Trade Committee, Joint Trade Board, or AAA Arbitrator under this Article only through arbitral, judicial, or governmental (e.g., the National Labor Relations Board) channels.

**Art. XV. Sec. 3. -** If an Association Employer violates this Article, and the Union and/or the Trustees of one or more Joint Trust Funds to which this Trade Agreement requires contributions institutes legal action to enforce an award by the Joint Trade Committee, Joint Trade Board or AAA Arbitrator remedying such violation, or has to defend an action that seeks to vacate such award, the Association Employer shall pay any accountants' and/or attorneys' fees incurred by the Union and/or the Joint Trust Funds, plus the costs of the litigation that have resulted from such legal action. This section shall not affect other remedies, whether provided by law or this Article, that may be available to the Union and/or the Joint Trade Trust Funds.

31

**Art. XV. Sec. 4.** - JOURNEYPERSONS shall neither directly nor indirectly, whether through their spouse or through any other subterfuge, contract to perform any of the Trades' work covered by this Trade Agreement.

**Art. XV. Sec. 5.** - Any Association Employer who shall perform work in a joint venture or through a subsidiary or affiliated company shall be responsible and liable for the compliance with the terms of this Trade Agreement by such joint venture or subsidiary or affiliated company and for the remittance of the contributions by such joint venture or subsidiary or affiliated company.

**Art. XV. Sec. 6.** - All Employers shall assign and perform all work within the craft jurisdiction of the Union as defined in Art. I, by directing employment of employees in the usual and regular manner and no Employer shall enter into any other arrangements to assign or perform said work. Said prohibited arrangements, without limiting the generality thereof, shall include lumping or agency agreements.

**Art. XV. Sec. 7.** - The Employer shall not subcontract work in the jurisdiction of District Council No. 9 to any other Employer who does not have a current signed Collective Bargaining Agreement with District Council No. 9.

## USE OF THE SPRAY AND PASTE MACHINES

**Art. XVI. Sec 1.** - Association Employers shall have no restrictions placed upon the use of the spray and paste machines.

## HEALTH & SAFETY:  GENERAL PROVISIONS

**Art. XVII. Sec. 1.** - In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the exclusive responsibility of Association Employers to ensure the safety of their employees and compliance by their employees with any safety rules contained in this Trade Agreement or those established by the Association Employers. Nothing in this Trade Agreement will make the Union liable to any employees or to any other persons in the event of work-related disease, sickness, accident, injury or death. Association Employers will not engage in any litigation against the Union, on a subrogation theory, contribution theory, or otherwise, so as to obtain a money judgment from it in connection with any work-related disease, sickness, accident, injury or death.

**Art. XVII. Sec. 2.** - Association Employers shall, at all times, provide safe tools, materials and equipment and safe working conditions.  If at any time, in the opinion of an employee, such tools, materials, equipment or working conditions are unsafe and constitute a hazard to health or physical safety, the employee shall have the right to refuse to work with such tools, materials and equipment or under such hazardous conditions unless and until they are made safe.  No employee shall be dismissed, disciplined, or otherwise discriminated against, nor shall pay be withheld, for refusal to work with such unsafe tools, materials, or equipment or under such unsafe or hazardous working conditions.

**Art. XVII. Sec. 3.** - The Association Employers agree that, during the life of this Trade Agreement, they will comply with all applicable federal and state laws concerning occupational

32



safety and health, including all applicable standards, rules and regulations issued pursuant thereto.

**Art. XVII. Sec. 4.** - Association Employers shall provide, at no cost to the employees, all necessary personal protective equipment and instructions on proper use of such equipment. Association Employers shall provide for the proper maintenance and cleaning of all necessary personal protective equipment. If, at any time, in the opinion of an employee, such personal protective equipment is defective, has not been properly maintained, or is not the appropriate personal protective equipment under the particular working conditions, the employee has the right to refuse to work with such equipment. No employee shall be dismissed, disciplined, or otherwise discriminated against, nor shall pay be withheld for refusal to work with such defective, improperly maintained, or inappropriate personal protective equipment. The employee shall immediately report to the Association Employer such defective, improperly maintained, or inappropriate personal protective equipment.

**Art. XVII. Sec. 5.** - Except as clearly and specifically required by law or regulation, no Association Employer shall require any employee to sign a form or statement dealing with health and safety, hazards in the workplace, or instruction and training relating to hazards in the workplace, unless that form or statement has been negotiated with and agreed upon by the Union.

**Art. XVII. Sec. 6.** - Association Employers may require employees to attend all classes concerning the Industry when offered by the Union.

**Art. XVII. Sec. 7.** - The bargaining Parties shall direct the Trustees of the Finishing Trades Institute of New York to create an appropriate and legally permissible program to ensure that all employees are physically fit to perform the necessary duties of the job.

**Art. XVII. Sec. 8.** - When a party with whom an Employer contracts requires security background checks and/or drug tests and/or alcohol tests, employees may be subject to such checks and/or tests. An employee shall cooperate with an Employer as necessary for obtaining any such checks and/or tests. Any disciplinary action imposed from such checks and/or tests shall only be for just cause. All such checks and/or tests shall be confidential, and may be disclosed only to the Association and Union and as per normal business or legal requirements. The Employer shall pay all cost of any such checks and/or tests.

**Art. XVII. Sec. 9.** - Anti-sexual harassment training shall be offered at the Training Center.

## HEALTH & SAFETY RULES

**Art. XVIII.** - Health & Safety Rules.

**Rule No. 1** - With respect to all potentially hazardous or toxic materials, the Material Safety Data Sheets and all OSHA requirements shall be made available and all manufacturers' precautions and OSHA mandates shall be strictly adhered to.

**Rule No. 2** - Regulation & Elimination of Paint Materials Injurious to Health. It shall be unfair and discriminatory to discharge a JOURNEYPERSON or apprentice for refusing to handle materials which are determined by competent authority to be injurious to health. If the Joint

33

Trade Committee shall, after hearing, determine that such a violation has occurred, reinstatement shall be ordered, where possible, with a view towards adequately compensating the JOURNEYPERSON or apprentice for any damages sustained, and ensuring that the problem will not reoccur.

**Rule No. 3** - Adequate Washing Facilities.   Where running hot or cold water is not available in or about the clothes locker, a sufficient supply of hand cleaner shall be furnished to the JOURNEYPERSONS and apprentices twice a day to provide adequate facilities for clean washing. Five (5) minutes shall be allowed for washing up at noon, and at quitting time.

**Rule No. 4** - Drinking Water.  Fresh drinking water and sanitary cups shall be provided to all JOURNEYPERSONS and apprentices twice a day during working hours.

**Rule No. 5** - Drop Cloths.  Drop cloths shall be maintained in a sanitary condition by the Employer.

**Rule No. 6** - Uniforms.

(a) The uniform purchased by all eligible members through the Union must be worn by such members. The uniform shall be white overalls with a blue-striped pants and white shirts with blue collars and a white cap with the Union emblem.  All work clothes shall be kept clean by the JOURNEYPERSON and apprentices.

The failure of any such member to wear the uniform and picture I.D. of the Union may be deemed just cause for dismissal.   If a member comes to work without a uniform or I.D., the Employer will warn the member not to return to work the following day or thereafter without a uniform and I.D.  If the Union discovers the member without a uniform or I.D., it will give prompt notice to the Employer.  If, after being warned, the member comes to work, and the Employer permits him or her to work, without a uniform or I.D., the Employer may be fined $500 and the member will be fined $100 by the Joint Trade Committee, said fines to be paid to the JTC.

No such fines will be levied in situations where it is not appropriate for members to wear the uniform.  The Parties agree that it is always appropriate for Union members to carry their I.D.

(b) The Industry Promotional Fund(s) shall reimburse the Union for no more than $150,000 per year for the life of this Trade Agreement, for the cost of providing uniforms for Journeypersons and apprentices.

**Rule No. 7** - Injuries.  Any injury, no matter how slight, must be reported immediately to the Association Employer's representative and the Union's representative, and shall be immediately taken care of by the employee's physician, if required.  On all jobs where there are five (5) JOURNEYPERSONS and apprentices or more, a first aid kit shall be provided.

**Rule No. 8** - Use of Elevators.  On all buildings in which elevator service is provided for any other trade, such service shall be made available to all Bargaining Unit members.

**Rule No. 9** - Scaffolds.  The scaffold work rate shall be paid for (i) interior and exterior swing scaffold work, which shall include any work on an exterior job where a swing scaffold is used



during the performance of the job (whether or not the particular work is done from the scaffold, on a fire escape, or otherwise); (ii) any interior portion of the work on a job where a swing scaffold is required in the performance of that interior work; (iii) work done with window belts or from boatswain chairs; and (iv) work performed twenty (20) feet or more from the floor or ground, including such work when done from extension ladders, or from stationary or rolling platforms, but not including such work when done from completely decked-over platforms.  In determining the height of the work, the highest point of work on the surface shall govern, and all work on that surface shall be compensated at the rate so determined.

**Rule No. 10** - Blood Testing.  Whenever blood testing, urine analysis or any other form of testing is a condition of employment on a job, all costs related to said testing shall be borne by the Association Employer.

**Rule No. 11** - OSHA Training.   The Employer shall not permit any JOURNEYPERSON or apprentice to work unless such JOURNEYPERSON or apprentice has completed the appropriate OSHA training as per OSHA regulations, and will comply with any other statutorily required training programs, such as, but not limited to, New York City Local Law 196.  The Employer shall have the burden of proving that the JOURNEYPERSON or apprentice satisfied this requirement.  The Union shall make every reasonable effort to provide timely OSHA, New York City Local Law 196, and related training and subsequent certifications at the Training Center.

**Rule No. 12** - Safety Training for Foremen.  In addition to the training required in Rule No. 11, all foremen must attend a minimum of eight (8) hours of safety training per calendar year.

## INSURANCE

**Art. XIX. Sec. 1.** - Every Association Employer shall carry all insurance required under state and/or federal laws and shall be required to keep a Certificate of Worker's Compensation on file with the Union.

## FRINGE BENEFIT CONTRIBUTIONS

**Art. XX. Sec. 1.** - Notwithstanding any other provision of this Agreement, the Board of Trustees of the Painting Industry Insurance Fund (the "Insurance Fund") shall administer benefit contributions paid by Employers who are signatories to this Trade Agreement ("Signatory Employers") for work performed within the jurisdiction of this Trade Agreement, pursuant to the rules, regulations and procedures set forth in this Article.  The Board of Trustees of the Insurance Fund shall also administer benefit contributions paid by members of the Window and Plate Glass Dealers Association and the Association of Wall, Ceiling and Carpentry Industries of New York, Inc. for work performed on account of which contributions are required to be made to the Funds set forth below, which members and contributions shall be subject to the rules, regulations and procedures set forth in this Article (and Articles XXI and XXII). The bargaining Parties' shall recommend to the Trustees that all Trustees shall have access to proof of work and payroll records.

**Art. XX. Sec. 2. - Contribution Rates.**



35

(a) All Signatory Employers shall make contributions as defined in this Trade Agreement, for each hour worked, and for overtime hours (for which fringe contributions shall be made at the rate of time and one-half), by their employees covered under this Trade Agreement, except where contribution amounts are based upon the amount of gross wages paid to an employee. In such a case, gross wages shall be defined as set forth in subsection (b) herein.

(b) "Gross Wages" and "Gross Wages Payable" as used in this Trade Agreement shall mean and include whichever of the two definitions below may be greater:

(i) The actual total gross earnings of any JOURNEYPERSON or apprentice; or

(ii) A gross estimated wage figure, subject to readjustment as hereinafter provided, equivalent to two (2) times the Signatory Employer's cost of all materials used by it during the fiscal accounting period, as finally computed and assessed at the close thereof. After review by the auditors and trustees of the present industry wage costs, and upon their recommendation, the above-stipulated formula may be adjusted.

### Art. XX. Sec. 3. - Trust Administration.

(a) Contributions - Each Signatory Employer shall pay to the Insurance Fund under Agreements and Declarations of Trust heretofore and hereafter created or amended, the terms and provisions of which are specifically incorporated herein by reference, contributions for each trust fund in such amounts as are set forth in the schedule of wages and benefit contributions in this Trade Agreement for all JOURNEYPERSONS and apprentices employed by the Signatory Employer, for the most recent pay period. Each Signatory Employer shall be bound by and to the Agreements and Declarations of Trust of such trust funds, and all interpretations of and rules and regulations issued thereunder, as though they had actually signed the same. Such contributions shall be deposited, in accordance with the terms of this Trade Agreement, into the following trust funds and administered as set forth hereafter:

(i) Insurance Fund (to provide health and welfare and vacation benefits). (See Art. XX, Sec. 6B)

(ii) District Council No. 9 Painting Industry Annuity Fund. (See Art. XX, Sec. 6C)

(iii) International Union of Painters and Allied Trades Union and Industry National Pension Fund. (See Art. XX, Sec. 5)

(iv) Finishing Trades Institute of New York (See Art. XX, Sec. 6A)

(v) International Union of Painters and Allied Trades Finishing Trades Institute (See Art. XX, Sec. 6A)

(vi) The Finishing Industries Labor-Management Partnership. (See Art. XX, Sec. 7)

(vii) District Council No. 9 Political Action Together - Political Committee. (See Art. XX, Sec. 8)

(viii) International Union of Painters Allied Trades Political Action Together – Political Committee. (See Art. XX, Sec. 9)

36



(ix) Association of Master Painters and Decorators of New York Industry Promotion Fund, Association of Wall, Ceiling and Carpentry Industries of New York, Inc. Promotion Fund, Window and Plate Glass Dealers Association Promotion Fund.   (See Art. XX, Sec. 11)

(b) Administration of Contributions.  Each Board of Trustees shall administer and expend said contributions pursuant to the aforesaid Agreements and Declarations of Trust and this Trade Agreement, and shall have the authority to increase or decrease any benefits payable hereunder in their sole and absolute discretion, and as they may determine from time to time.

### Art. XX. Sec. 4. - Electronic Voucher System.

(a) Method of Operation.

(i)      Electronic Vouchers. Each Signatory Employer employing a JOURNEYPERSON or apprentice shall make benefit contributions for said JOURNEYPERSON or apprentice by purchasing benefits contribution vouchers from the Funds on a weekly basis.  Vouchers shall represent payment for hourly benefit contributions in such denominations as the Trustees of the Funds shall deem appropriate.

(ii)      Purchase of Electronic Vouchers.  The Signatory Employer shall file with the Funds a weekly requisition for vouchers accompanied by the exact amount of payment to the Funds for all vouchers purchased. In the event that a Signatory Employer defaults on any specific remittance for any reason, payment for vouchers thereafter shall be by certified or bank check only.  Vouchers shall be issued by the Funds electronically so as to insure timely delivery of vouchers to JOURNEYPERSONS and apprentices.

(iii)      Delivery of Electronic Vouchers.  Vouchers representing the number of hours of work credited to each JOURNEYPERSON and apprentice weekly shall be given to each JOURNEYPERSON and apprentice with his or her wages. In the event a JOURNEYPERSON or apprentice is laid off prior to the end of the payroll week, all fringe benefit contributions vouchers for hours of work credited to the JOURNEYPERSON and apprentice must be delivered and received by the Union or the JOURNEYPERSON and apprentice before the close of business of the following business day.

(iv)      Weekly remittance reports.  The Signatory Employer shall file with the Funds a weekly remittance report in a form provided by the Funds, setting forth the name of each JOURNEYPERSON and apprentice employed by the Signatory Employer, the prior work week, the number of hours of work credited, and the fringe benefit contribution voucher issued to each JOURNEYPERSON and apprentice.  Any signatory Employer who fails to include all workers in the remittance report, or fails to accurately submit a weekly remittance report, shall be in violation of this Agreement.

(v)      The Parties agree to recommend to the Trustees of the Funds that they explore the possibility of developing programs to more efficiently collect contributions including, without limitation, adopting an electronic fund collection system.

(b)      Violations.  In the event a Signatory Employer fails to remit vouchers to any JOURNEYPERSON or apprentice at the time such vouchers must be given to the JOURNEYPERSON or apprentice, sells vouchers, duplicates vouchers, violates this Trade



Agreement in any manner (including, but not limited to, subcontracting in violation of the Trade Agreement) that causes vouchers not to be remitted, or in any manner avoids the requirements of the voucher system, such act or inaction shall constitute a failure to pay benefits contributions under this Trade Agreement. In such event, the Union and the Funds shall each have the right to any and all remedies provided for in this Trade Agreement for a breach of the Trade Agreement and/or failure to pay fringe benefit contributions, as well as any remedies provided for under state or federal law.

(c) Shop Steward Reports.  In addition to the remittance report referred to in sub-section (a)(iv) above, each Signatory Employer shall prepare and give to the Shop Steward for each job by close of business of the business day following the end of the payroll week, a Shop Steward weekly payroll report. Such report shall list each JOURNEYPERSON or apprentice at the subject job for the preceding payroll week, hours of work credited, fringe benefit contribution voucher serial numbers received by the JOURNEYPERSON or apprentice, social security number, and location of the job site.

(d) Signatory Employer Withholding Obligation.  The Signatory Employer hereby agrees to withhold all taxes, benefit contributions and check-off from each JOURNEYPERSON and apprentice, and to remit same to the funds as set forth herein.

(e) Violations.  In the event a Signatory Employer fails to remit vouchers to any JOURNEYPERSON or apprentice at the time such vouchers must be given to the JOURNEYPERSON or apprentice, sells vouchers, duplicates vouchers, violates this Trade Agreement in any manner (including, but not limited to, subcontracting in violation of the Trade Agreement) that causes vouchers not to be remitted, or in any manner avoids the requirements of the voucher system, such act or inaction shall constitute a failure to pay benefits contributions under this Trade Agreement. In such event, the Union and the Funds shall each have the right to any and all remedies provided for in this Trade Agreement for a breach of the Trade Agreement and/or failure to pay fringe benefit contributions, as well as any remedies provided for under state or federal law.

**Art. XX. Sec. 5.** - International Union of Painters and Allied Trades Union and Industry National Pension Trust ("Pension Fund").

(a) The Trustees as described in Art. XX, Sec. 1 shall pay all contributions received from Signatory Employers for pension benefits to the Trustees of the International Union of Painters and Allied Trades Union and Industry National Pension Fund (the "National Trustees").

(b) The National Trustees shall administer and expend said contributions pursuant to the provisions of an Agreement and Declaration of Trust, as amended, and also in accordance with the Merger Agreement, by and between the Trustees of the District Council No. 9 Painting Industry Pension Fund and the National Trustees.

(c) Upon receipt of payment from a Signatory Employer, the Trustees of the Insurance Fund shall remit to the National Trustees the pension contributions collected by the Trustees of the Insurance Fund for the most recent pay period, together with a list of JOURNEYPERSONS and apprentices for whom pension contributions have been received and are covered hereby, and the

number of hours and/or days worked by each JOURNEYPERSON and apprentice during the applicable period.

(d)  To the extent that (i) any contribution schedule applicable to Association members adopted by the trustees of the International Union of Painters and Allied Trades Union and Industry National Pension Fund is greater than the contribution rate that was otherwise in effect under the collective bargaining agreement for the remainder of its term or (ii) any Employer under this Agreement becomes subject to the automatic Employer surcharge under Section 432 of the Internal Revenue Code or any excise tax, penalty, fee, other surcharge or other amount relating to the funding of the Pension Fund (including those under Section 4971(g) of the Internal Revenue Code, but not including interest, liquidated damages, or other amounts owed as a consequence of failing to make timely remittance of contributions to the Pension Fund), then the Parties shall meet and reach an agreement to pay for any additional contribution and/or surcharge amounts, excise taxes, penalties, fees or other amounts that such Employer is required to pay within the economic parameters of the Trade Agreement.

Any future increases to the Pension Fund contributions shall be taken out of the economic package agreed to in this Agreement.

**Art XX. Sec. 6(A). -** Finishing Trades Institute of New York and the International Union of Painters and Allied Trades Finishing Trades Institute.

(a) For the duration of this Trade Agreement, and any renewals or extensions thereof, the Signatory Employers and any Employer as defined in the Agreement and Declaration of Trust between the Union and the Association of Master Painters and Decorators of New York, Inc., agree to make payments to the Finishing Trades Institute of New York (the "Apprenticeship and Training Fund"), and further agree to make payments to the International Union of Painters and Allied Trades Finishing Trades Institute established under an Agreement and Declaration of Trust.  All of the aforesaid payments shall be made in such amounts as set forth in the following sub-section (b), and as set forth in the schedules of wages and contributions in this Trade Agreement.

(b) Contributions.

(i)      For each hour worked or portion thereof, for which a JOURNEYPERSON or apprentice receives pay, the Signatory Employer shall make a contribution to the Apprenticeship and Training Funds in the amount set forth in the schedule of wages and benefit contributions in this Trade Agreement.

(ii)     For each hour worked or portion thereof, for which a JOURNEYPERSON or apprentice receives pay, the Signatory Employer shall make a contribution to the International Union of Painters and Allied Trades Finishing Trades Institute in the amount set forth in the schedule of wages and benefit contributions in this Trade Agreement.  Such payments shall be made in the manner and form as shall be determined by the Trustees of the International Union of Painters and Allied Trades Finishing Trades Institute.

(iii)    For the purposes of this Article, contributions shall be paid for each hour a JOURNEYPERSON or apprentice receives pay, including hours attributable to show up time

39



and other hours for which pay is received by the JOURNEYPERSON or apprentice in accordance with this Trade Agreement.

(iv)   Contributions shall be paid on behalf of any JOURNEYPERSON or apprentice, including probationary employees, starting with his/her first hour of employment in a job classification covered by this Trade Agreement.

(v)   The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the I.U.P.A.T. Finishing Trades Institute such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust.

(vi)   The Union hereby irrevocably designates as its representatives on the Board of Trustees of the I.U.P.A.T. Finishing Trades Institute such Trustees as are now serving, or who will in the future serve, as Union Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust.

(vii)   The Parties hereto further agree to be bound by all of the lawful actions taken by the Trustees of the I.U.P.A.T. Finishing Trades Institute in accordance with and pursuant to the Agreement and Declaration of Trust.

**Art. XX. Sec. 6(B).** - Painting Industry Insurance Fund.

(a)   For the duration of this Trade Agreement, and any renewals or extensions thereof, the Signatory Employers agree to make payments to the Insurance Fund under an Agreement and Declaration of Trust, as amended thereafter from time to time, the terms of which are herein specifically incorporated by reference, for contributions in such amounts as are set forth in the schedule of wages and benefit contributions in this Trade Agreement and to be bound by said Agreement and Declaration of Trust as though they had actually signed the same.

(b)   The Signatory Employers hereby irrevocably designate as their representatives on the Board of Trustees of the Insurance Fund such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust establishing the Insurance Fund.

(c)   The Union hereby irrevocably designates as its representatives on the Board of Trustees of the Insurance Fund such Trustees as are now serving, or who will in the future serve, as Union Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust establishing the Insurance Fund.

(d)   The Parties hereto further agree to be bound by all of the lawful actions taken by the Trustees of the Insurance Fund in accordance with and pursuant to the Agreement and Declaration of Trust establishing the Insurance Fund.

(e)   An Association Employer may, by making the required payments into the Fund, cover such other of his employees as he may elect and provided such coverage is in compliance with law and the Agreement and Declaration of Trust Agreement – so that the Agreement permits participation agreements for Employer's office staff.



(f)      The Parties agree that if the Patient Protection and Affordable Care Act or any future governmental healthcare reform requires (i) any payment by contributing Employers for some or all of the benefits already provided for in the Insurance Fund to participants or (ii) any contributing Employers to pay any excise or other tax, penalty (including, without limitation, assessable Payments under Internal Revenue Code Section 4980H and the regulations and guidance thereunder), fee or other amount relating to or resulting in whole or in part from the eligibility or premium requirements of, or the level of benefits provided by, the Insurance Fund or otherwise relating to the Insurance Fund, the Parties shall meet and reach an agreement to either (i) revise the plan of benefits under the Insurance Fund so that such excise or other tax, penalty (including, without limitation, assessable payments), fee or other amount are not payable or (ii) pay for such excise or other tax, penalty (including, without limitation, assessable payments), fee or other amount within the economic parameters of the Trade Agreement.

**Art. XX. Sec. 6(C). -** Painting Industry Annuity Fund.

(a)      For the duration of this Trade Agreement, and any renewals or extensions thereof, the Signatory Employers agree to make payments to the Painting Industry Annuity Fund under an Agreement and Declaration of Trust, as amended thereafter from time to time, the terms of which are herein specifically incorporated by reference, for contributions in such amounts as are set forth in the schedule of wages and benefit contributions in this Trade Agreement and to be bound by said Agreement and Declaration of Trust as though they had actually signed the same.

(b)      The Signatory Employers hereby irrevocably designate as their representatives on the Board of Trustees of the Painting Industry Annuity Fund such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust establishing the Painting Industry Annuity Fund.

(c)      The Union hereby irrevocably designates as its representatives on the Board of Trustees of the Painting Industry Annuity Fund such Trustees as are now serving, or who will in the future serve, as Union Trustees, together with their successors, as provided for in the Agreement and Declaration of Trust establishing the Painting Industry Annuity Fund.

(d)      The Parties hereto further agree to be bound by all of the lawful actions taken by the Trustees of the Painting Industry Annuity Fund in accordance with and pursuant to the Agreement and Declaration of Trust establishing the Painting Industry Annuity Fund.

**Art. XX. Sec. 7. -** Finishing Industries Labor-Management Partnership.

(a)      For the duration of this Trade Agreement, and any renewals or extensions thereof, the Signatory Employers and any Employer as defined in an Agreement and Declaration of Trust establishing the Finishing Industries Labor-Management Partnership ("LMP"), agree to make payments to LMP for the JOURNEYPERSONS and apprentices covered by this Trade Agreement, and to be bound by and to said Agreement and Declaration of Trust.  The Association of Master Painters and Decorators of New York, Inc. agrees to submit ten cents ($0.10) per hour to the LMP.

41



(b)     Contributions.  For each hour worked or portion thereof, for which a
JOURNEYPERSON or apprentice receives pay, the Signatory Employers shall make a
contribution in the amount set forth in the schedule of wages and benefit contributions in this
Trade Agreement.  For the purposes of this section, contributions shall be paid for each hour a
JOURNEYPERSON or apprentice receives pay, including hours attributable to show up time
and other hours for which pay is received by the JOURNEYPERSON or apprentice in
accordance with this Trade Agreement.

(c)     All contributions shall be made in the same manner as contributions are made to the other
funds provided for in Art. XX.  The Trustees shall have the authority to have an independent
Certified Public Accountant audit the financial books and records of the Signatory Employer for
the purpose of determining the accuracy of contributions to this fund.

**Art. XX. Sec. 8.** - District Council No. 9 Political Action Together — Political Committee.

Each employee may, by written instructions, direct the Trustees of the Insurance Trust to deduct
from the JOURNEYPERSON's or apprentice's vacation account, one cent per hour of each
hourly contribution made by the Signatory Employer to the JOURNEYPERSON's or
apprentice's account, and remit same to the District Council No. 9 Political Action Together  -
Political Committee.   It is specifically understood and agreed by the Parties to this agreement
that the Signatory Employers have no involvement whatsoever with the establishment or
operation of this program. The Trustees' responsibility hereunder is limited solely to facilitating
the collection and remission of such amounts to the D.C. 9 - PAT.

**Art. XX. Sec. 9.** - International Union of Painters and Allied Trades Political Action Together —
Political Committee.

Authorization.  Each Signatory Employer shall agree to deduct from every
JOURNEYPERSON's or apprentice's wages in the amount set forth in the schedule of wages
and benefit contributions in this Trade Agreement per hour, and to pay same as a contribution to
the International Union of Painters and Allied Trades Political Action Together Fund.  Each
Signatory Employer agrees to honor authorization for check-off of political contributions from
all JOURNEYPERSONS or apprentices and who supply such authorization in the form or such
other similar form as the International Union of Painters and Allied Trades Political Action
Together Fund shall deem acceptable.

**Art. XX. Sec. 10.** - Check-off of Administrative Dues.

(a)     Dues Check-Off System. Every Signatory Employer hereby agrees to check-off from the
gross taxable wages, defined herein as total wages, vacation, and Political Action Together
contributions, of each JOURNEYPERSON and apprentice employed by such Signatory
Employer during the term of this Trade Agreement, administrative dues in the amounts set forth
in the Union Bylaws and any amendments thereto.



(b)     Administration of Dues Check-Off.  Upon receipt of payment from the Signatory Employer, the Trustees of the Insurance Fund shall remit to the Union the entire amount of administrative dues collected by said Trustees for the most recent pay period, together with a list of JOURNEYPERSONS and apprentices covered hereby for whom dues have been received, and the number of hours worked by each during the applicable period. The Trustees' responsibility hereunder is limited solely to facilitating the collection and remission of such amounts to the Union.

(c)     Employee Authorization.  At the time of the employment of any JOURNEYPERSON or apprentice, the Signatory Employer will submit to each JOURNEYPERSON or apprentice a dues deduction authorization card in triplicate for his/her voluntary signature, one copy of which is to be retained by the Signatory Employer, one copy retained by the JOURNEYPERSON or apprentice, and the other returned to the Union.  The form is to be supplied to the Signatory Employer by the Union.

(d)     Signatory Employer's Obligations.  The obligations of the Signatory Employers under sub-section (a) above shall only be as to JOURNEYPERSONS and apprentices who have voluntarily signed a valid dues deduction and authorization card as referred to in sub-section (c) above.

(e)     Liability of the Trustees and Cost of Administration.  Sections 8, 9 and 10 of Art. XX are only for the convenience of the Union to better facilitate the collection of its administrative dues and the collection and remission of contributions to the District Council No. 9 Political Action Together -Political Committee and the International Union of Painters and Allied Trades Political Action Together - Political Committee concurrently with collecting Signatory Employer Fringe Benefit Contributions.  Neither the Insurance Fund nor any of the fringe benefit funds to which contributions are required to be made under this Trade Agreement (nor any of their Boards of Trustees or fiduciaries) will incur any liability for any failure to collect any such administrative dues or contributions.  For its services, the Union hereby agrees to reimburse the Insurance Fund for all reasonable costs of administration of the check-off of administrative dues or the collection of contributions to the District Council No. 9 Political Action Together – Political Committee and the International Union of Painters and Allied Trades Political Action Together - Political Committee, and to indemnify and hold harmless the Funds, their Trustees and/or the other fiduciaries against any and all claims, demands, suits and liabilities that may arise out of such administration.  It is specifically understood and agreed by the Parties to this Trade Agreement that no Association nor any Signatory Employer has any involvement whatsoever with the establishment or operation of this program.

**Art. XX. Sec 11.** - Industry Promotion Funds.

(a)     Administration.  The Association of Master Painters and Decorators of New York Industry Promotion Fund shall be administered by the Association of Master Painters and Decorators of New York, Inc.  The Association of Wall, Ceiling and Carpentry Industries of New York, Inc. Industry Promotion Fund shall be administered by the Association of Wall, Ceiling and Carpentry Industries of New York, Inc.  The Window and Plate Glass Dealers



Association Industry Promotion Fund shall be administered by the Window and Plate Glass Dealers Association.

(b)     Contributions.  For each hour worked or portion thereof, for which a JOURNEYPERSON or apprentice receives pay, the Signatory Employers shall make a contribution in the amount set forth in the schedule of wages and benefit contributions in this Trade Agreement.  Contributions shall be paid to either the Association of Master Painters and Decorators of New York Industry Promotion Fund, the Association of Wall, Ceiling and Carpentry Industries of New York Industry Promotion Fund or the Window and Plate Glass Dealers Association Industry Promotion Fund (collectively, the "Industry Promotion Funds"), to be determined as follows:

(i)     For drywall work performed in the historical geographic jurisdiction of Local Union No. 1486, contributions shall be made to the Association of Wall, Ceiling and Carpentry Industries of New York Industry Promotion Fund.

(ii)     For glazing work performed under this Trade Agreement, contributions shall be made to the Window and Plate Glass Dealers Association Industry Promotion Fund.

(iii)     For all other work performed under this Trade Agreement, contributions shall be made to the Association of Master Painters and Decorators of New York Industry Promotion Fund.

(iv)     The painting industry promotion fund will increase subject to the following schedule:

| a. May 1, 2019 | $0.40 |
| b. May 1, 2020 | $0.45 |
| c. May 1, 2021 | $0.47 |
| d. May 1, 2022 | $0.49 |
| e. May 1, 2023 | $0.52 |

(c)     No Anti-Union Activity.  The Associations and their Employer members agree that no moneys collected by the Industry Promotion Funds shall be used for any anti-union activity or any actions detrimental to union membership.

(d)     Liability of the Trustees and Cost of Administration.  Section 11 of Art. XX is only for the convenience of the Associations to better facilitate the collection and remission of contributions to the Industry Promotion Funds concurrently with collecting Signatory Employer Fringe Benefit Contributions.  Neither the Insurance Fund nor any of the fringe benefit funds to which contributions are required to be made under this Trade Agreement (nor any of their Boards of Trustees or fiduciaries) will incur any liability for any failure to collect any such contributions.  For its services, the Associations hereby agree to reimburse the Insurance Fund for all reasonable costs of administration of the collection of contributions to the Industry Promotion Funds and hold harmless the Funds, their Trustees and/or the other fiduciaries against any and all claims, demands, suits and liabilities that may arise out of such administration.  It is

44

specifically understood and agreed by the Parties to this Trade Agreement that the Union does not have any involvement whatsoever with the establishment or operation of this program.

**Art. XX. Sec. 12.** - Wages, Fringe Benefits, Hours, Travel Subsistence and Working Conditions.

(a)     Every Signatory Employer, when working in the jurisdiction of a District Council or Local Union affiliated with the International Union of Painters and Allied Trades, where the projects are located, shall, with respect to employees hired from within said jurisdiction, make contributions on behalf of such employees to all pension, health, welfare, apprenticeship and training funds, and other fringe benefit funds provided for in the collective bargaining agreement currently in effect between said District Council or Local Union and area contractors.  For all JOURNEYPERSONS and apprentices a Signatory Employer employs on a job outside the Union's territorial jurisdiction, the Signatory Employer shall make such contributions to their "home area" fringe benefit funds as are provided for in the collective bargaining agreement of the employees' "home area" District Council or Local Union.

(b)     For the foregoing purpose, the Signatory Employers hereby:

(i)     Agree that such contributions shall be made at the rate, in the manner and under the terms and conditions specified in the applicable Collective Bargaining Agreement;

(ii)     Agree that where the International Union of Painters and Allied Trades Union and Industry National Pension Trust Fund is applicable, contributions shall be made in the manner and under the terms and conditions specified in the Standard Form of Participation Agreement issued by the National Trustees;

(iii)     Agree to be bound to all Trust Agreements or other Trust Documents establishing said fringe benefit funds;

(iv)     Irrevocably designate as their representative on the Boards of Trustees of said Funds, such Trustees as are presently serving pursuant to said Trust Agreements or other Trust Documents as Union and Employer Trustees, together with their successors selected in the manner provided in said Trust Agreements or other Trust Document; and

(v)     Agree to be bound by all actions of said Boards of Trustees pursuant to the said Trust Agreements or other Trust Documents.

**Art. XX. Sec. 13.** - IUPAT Central Collections Unit.

Signatory Employers shall, with respect to any and all contributions or other amounts that may be due and owing to the IUPAT and its related or affiliated Funds or organizations including, but not limited to, the IUPAT Industry Pension Plan, the IUPAT Industry Annuity Plan, the IUPAT Joint Apprenticeship and Training Fund, the Finishing Industries Labor-Management Partnership, the IUPAT Political Action Together (and any and all other affiliated International organizations as they may be created or established in the future), upon receipt of a written directive to do so by the affiliated Funds and organizations, make all required payments either directly or through an intermediate body to the 'Central Collections Unit' of the International Union and its affiliated Funds and organizations.  Such contributions shall be submitted on

45

appropriate forms, in such format and with such information as may be agreed to by Central Collections.

**Art. XX. Sec. 14.** - ADR of Workers' Compensation Claims.  The Parties agree to explore the establishment of an alternative dispute resolution program for the resolution of workers' compensation claims.

**Art. XX. Sec. 15.** - Job Target Fund.  The Parties agree to explore the establishment of a Job Target Fund, by way of Employer contribution, as part of their efforts to maintain the competitiveness of the industry.

**Art. XX. Sec. 16.** - The Parties direct the health fund trustees to continue to explore all appropriate efforts to achieve health fund savings each year, through various techniques such as: rebidding vendor contracts, limiting the hospital/provider network, etc. while continuing to ensure quality care.

## ENFORCEMENT OF ARTICLE XX

**Art. XXI. Sec. 1.** - Payments.

(a)      All Art. XX Fringe Benefit Contributions shall be made at such times and in such manner as the Boards of Trustees (collectively, the "Trustees") and/or the National Trustees shall prescribe in accordance with the applicable Trust Agreement, as amended from time to time. The Signatory Employers agree that the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll records, payroll tax returns, cash disbursements records, bank statements, vendor invoices and any and all union reports for all other trades, wages, and general ledger of any Signatory Employer for the purpose of determining the accuracy of such contributions, provided, however, that the compensation and social security number of senior management of the Signatory Employer may be redacted from all such records. "Senior management" shall be defined as any officer, director, partner(s) or owner(s).

The independent Certified Public Accountant shall have the authority to audit, in addition to the documents and information set forth in the preceding paragraph, corporate tax information relating to a Signatory Employer or its affiliated entities, in the event that such independent Certified Public Accountant, in his professional judgment, determines that it is necessary to review such documents and information for the purpose of determining the accuracy of the Signatory Employer's Art. XX Fringe Benefit Contributions and such independent Certified Public Accountant provides the Signatory Employer, in writing, with an advance explanation of the reasons for such determination.  All documents and information furnished by the Signatory Employer in connection with such audit, shall be treated as confidential and shall not be disclosed to any third parties, except as may be necessary to enforce the Signatory Employer's obligation with respect to the Fringe Benefit Funds under this Trade Agreement

Unless otherwise provided by the Trustees, payments for all fringe benefit contribution vouchers must be made by certified or bank checks.  No cash currency, personal or business checks shall be accepted, except by Signatory Employers in good standing of a recognized Association or other Signatory Employers, who shall be able to pay with regular business account checks on a New York State licensed bank with a branch located in the geographic jurisdiction of this Trade

46

Agreement. If any Signatory Employer shall have its check dishonored, then this privilege shall be withdrawn.

(b)     For the purpose of this Article, Article XX and Article XXII, each hour worked and paid for, including hours attributable to show up time, and other hours for which pay is received by a JOURNEYPERSON or apprentice in accordance with this Trade Agreement, shall be counted as hours for which Art. XX Fringe Benefit Contributions are payable.

(c)     Art. XX Fringe Benefit Contributions shall be paid on behalf of any JOURNEYPERSON or apprentice, including, but not limited to, probationary employees, starting with his/her first day of employment in a job classification covered by this Trade Agreement.

(d)     The failure of an Employer to make fringe benefit contributions or pay interest, liquidated damages or fees related thereto as provided for in this Article and Article XXII and Article XX, shall be attributed to any officer, stockholder, partner or proprietor in actual control of said Employer, and execution of this Trade Agreement by any such person shall bind said person individually to the terms and conditions set forth herein. A default in payment of any fringe benefit contributions or pay interest, liquidated damages or fees related thereto due pursuant to this Article and Article XX and Article XXII shall follow said officer, stockholder, partner, and/or proprietor into any succeeding enterprise entered into by said person. Where the Trustees determine that an Employer is being operated in the name of a nominee, family member, successor entity or alter ego of an individual actually controlling the Employer, the Trustees may consider any default of the obligations set forth in such Articles to be the default of said controlling individual.

(e)     Art. XX Fringe Benefit Contributions Payment Method. Signatory Employers must make Art. XX Fringe Benefit Contributions under the Electronic Voucher System. The amount of the security payment shall be $10,000.00. Benefit contributions are considered assets of the respective Funds and become vested plan assets when they become due from the Employer, whether or not they have been paid to the Funds, and title to all money paid to or due and owing the Funds vests and exclusively remains in the Trustees of the Funds. The Employer shall have no legal or equitable right, title or interest in or to any sum paid by or due from the Employer and such contributions constitute a trust fund.

(f)     Regardless of the ability or inability of a Signatory Employer to pay its required Fringe Benefit Contributions, the Signatory Employer shall be required to submit remittance reports weekly and the Bargaining Parties recommend that the trustees create an option for Employers to make fund payments and submit remittance reports electronically. The failure to submit such reports will subject the Signatory Employer to fines by the Joint Trade Committee.

**Art. XXI. Sec. 2. -** Penalties.

(a)     The required Art. XX Fringe Benefit Contributions constitute a consideration for entering into this Trade Agreement and constitute its very essence. Failure by any Signatory Employer to pay to the Trust Funds amounts due under this Trade Agreement shall be deemed a breach of this

47

Trade Agreement, and thereupon a termination notice shall be served by the Trustees upon the Union. In such event, the Union must enforce the foregoing and following provisions relating to payment to the Trustees. In the event a Signatory Employer fails to make the required payments or reports for more than forty-eight (48) hours after such notice of termination, the Union must order its JOURNEYPERSONS and apprentices to cease work on all the delinquent Employer's projects until all required payments and/or reports have been rendered. Such Signatory Employer must pay all such JOURNEYPERSONS and apprentices for all time lost, not to exceed one (1) week of wages per JOURNEYPERSON or apprentice.

(b)     If a Signatory Employer fails to make contributions to the Pension Fund within the date required by the National Trustees, or fails to make any other Art. XX Fringe Benefit Contributions when due in a timely manner pursuant to this Trade Agreement, the Union shall have the right to take whatever steps are necessary to secure compliance with this Trade Agreement, notwithstanding any other provisions hereof to the contrary. The Signatory Employer shall be liable for all costs of collection of the payments due together with attorneys' fees and such penalties as may be assessed by the Trustees and/or National Trustees, as set forth in Art. XXII, Sec. 2(a), (b), (c) and (d). The Signatory Employer's liability for payment of Pension Fund Contributions under this Trade Agreement shall not be subject to or covered by the grievance or arbitration procedure in Articles XII and XIII, nor the "no strike" clause set forth in Art. XIV.

(c)     Any job action taken by the Union pursuant to the procedures in foregoing Article XXI, Sections 2(a) and (b) shall not be covered by the "no strike" clause set forth in Article XIV. The Union shall suffer no liability for ordering its members to cease work upon demand from the Trustees and each Signatory Employer expressly waives any right it may have to bring suit for damages or other relief against the Union for breach of the no-strike clause in the event the Union orders its members to cease work after demand from the Trustees.

**Art. XXI. Sec. 3.** - Qualification for Income Tax Deductions. Each of the Trust Funds set forth in Article XX which are intended to qualify under the Internal Revenue Code shall at all times conform with the currently applicable requirements of the Internal Revenue Code so as to enable each Signatory Employer at all times to treat Art. XX Fringe Benefit Contributions as a current deduction for income tax purposes. In the event that an Art. XX Fringe Benefit Contribution is not currently deductible, the Signatory Employer shall not be required to make such payment.

## BONDS, DAMAGES, FEES AND INTEREST

**Art. XXII. Sec. 1.** - Bonds.

(a)     Security. The Signatory Employer shall provide security to the Trustees for the faithful performance by it of the requirements under this Trade Agreement for the payment of Signatory Employer Benefit Contributions, liquidated damages, interest, attorneys' fees, costs of collection and other monetary obligations under this Trade Agreement. The Trustees shall be entitled to retain any interest that accrues on such security during the time such security is deposited with the Trustees.

(b)     Form of Security. Such security deposited with the Trustees shall be in the form of cash, surety bond acceptable to the Trustees, or other security acceptable to the Trustees.



(c)     Amount of Security. The amount of security which the Signatory Employer is required to deposit with the Trustees under the voucher system shall be $10,000.00. The security provided in accordance with the foregoing shall be available to satisfy any delinquency in Article XX Fringe Benefit Contributions and any interest or liquidated damages resulting from such delinquency. In the event that a former Signatory Employer does not report any work covered by this Trade Agreement (or its successor) for a two year period and such Employer refuses or fails to make records available to the Certified Public Accountant as described in Article XXI, Section 1(a), the entire amount of such Employer's security shall apply and be paid to the Fringe Benefit Funds (in proportion to their respective contribution rates) to the Signatory Employer's credit.

(d)     If at any time a Signatory Employer's security on deposit with the Trustees shall, for any reason, be in an amount less than the amount required by this Section, the Signatory Employer shall immediately deposit with the Trustees additional security so that the Signatory Employer's security on deposit shall at all times comply with this subsection.

(e)     The Trustees shall not accept any surety bond or other non-cash collateral from any Signatory Employer who shall have failed in the past to make payment of any sums found by the Trustees or National Trustees to be due under this Trade Agreement or under any prior Trade Agreement. In such cases, compliance with the security requirements hereof shall be by cash deposit only.

(f)     Additional Security. In the event the Trustees determine that a Signatory Employer is guilty of violating any provision of this Trade Agreement or in the event the Trustees bring suit against a Signatory Employer to collect unpaid Art. XX Fringe Benefit Contributions or interest, liquidated damages or fees related thereto, the Signatory Employer shall provide additional security in such form and amount, as the Trustees shall determine. The Trustees may, but are not required to, assess such additional security in an amount no less than the amount of the Signatory Employer's potential, existing or future liability to the Trustees. Any additional security required pursuant to this subsection shall be deposited with the Trustees who are authorized to pay out of such security any sums found by the Trustees to be due for unpaid Art. XX Fringe Benefit Contributions, liquidated damages, interest, attorneys' fees, or other costs of collection.

**Art. XXII. Sec. 2.** - Damages, Interest and Fees.

(a)     Liquidated Damages. Time is of the essence for the payment of Art. XX Fringe Benefit Contributions. The Parties recognize and acknowledge that the regular and prompt payment of Art. XX Fringe Benefit Contributions by Signatory Employers is essential, and that it would be extremely difficult, if not impractical, to fix the actual expense and damages which will result from a failure of a Signatory Employer to make the required Art. XX Fringe Benefit Contributions in full within the time provided, and without becoming delinquent. Therefore, the Parties agree that if the required Art. XX Fringe Benefit Contributions shall become delinquent, the amount of damage resulting from any such delinquency shall be, by way of liquidated damages, and not as a penalty, a sum equivalent to 10% of the total Art. XX Fringe Benefit Contributions required pursuant to this Trade Agreement, for each failure to pay in full within the time provided in Art. XX, Sec. 1(g), for each pay period for which payments are required to be made; unless a lawsuit is commenced to recover such contributions, in which case the liquidated damages shall be 20% of the required contributions. The liquidated damages, so fixed

and computed, shall be added to and become a part of the Signatory Employer's required Art. XX Fringe Benefit Contribution due to any of the Trustees.

Notwithstanding the foregoing, no Signatory Employer shall be assessed liquidated damages if a delinquency is cured within 29 days from the date from which contributions were due.

(b)     Interest.  If the required Art. XX Fringe Benefit Contributions of a Signatory Employer become delinquent, in addition to the amount assessed as liquidated damages, interest shall be added to the obligation of the delinquent Signatory Employer, calculated monthly at the annual rate of the prime rate plus 2.0%, which shall be calculated based upon the sum of all Art. XX Fringe Benefit Contributions due for the period for which the Signatory Employer is delinquent, starting with the first day of delinquency. Notwithstanding the foregoing, no Signatory Employer will be charged interest if a delinquency is cured within 8 days from the date from which contributions were due.

(c)     Attorneys' Fees and Cost of Collection.  If the required Art. XX Fringe Benefit Contributions become delinquent, in addition to the amount due as liquidated damages and interest as provided for in the preceding subsections (a) and (b), there shall be added to the obligation of the delinquent Signatory Employer, all reasonable expenses incurred by the Trustees in the collection of any delinquency, liquidated damages and interest, including but not limited to (i) reasonable attorneys' fees; (ii) accountant's fees; (iii) cost of attachment and execution; (iv) bond; (v) receivers; and (vi) court costs.

(d)     All liquidated damages, interest, and any other costs and assessments due and received from a delinquent Signatory Employer shall be paid to and received by the Trustees.

**Art. XXII. Sec. 3. -** Trust Fund Hearing.

(a)     Signatory Employer Request.  Should a Signatory Employer, after an audit held by the Trustees, be subject to an assessment of additional Art. XX Fringe Benefit Contributions, the Signatory Employer shall be entitled, on request, to a hearing before the Trustees or a properly appointed subcommittee thereof.  At such hearing, the Signatory Employer shall be given an opportunity to present all available facts, and shall be subject to open examination thereon, so that the Signatory Employer may establish an actual lower direct labor cost such that a readjustment of the basis for the calculation of the Signatory Employer's Fringe Benefit Contributions due to the Trustees is warranted. At such hearing, the Trustees shall consider the recommendation of the Funds' auditors and any proof that the Signatory Employer may offer. The decision of the Trustees, after such hearing, shall be final and binding.

(b)     Failure to Request Hearing.  If, after an audit and a final assessment of further contributions due, the Signatory Employer fails, within twenty (20) days after written notice thereof given by the Trustees, to request in writing a hearing before them as provided in the preceding sub-section (a), the Signatory Employer shall be deemed conclusively to have consented thereto, with no further recourse.

## CONDITIONS

**Art. XXIII. Sec. 1. -** In the event that the Union enters into a contract, or contracts, or enters into renewals or modifications of a contract, or contracts, with any Employers performing the work



covered by this Trade Agreement which contain new or revised economic terms or other conditions effective on or after May 31, 2000, which economic terms or other conditions are more favorable to such Employers than the terms contained in this Trade Agreement, the Union shall immediately notify the Association of such more favorable terms, and the Association and all its members shall be entitled to and may have the full benefit of any and all such more favorable terms, upon notification to the Union.  The Union shall also provide written notice to the Association if it offers to any contractor that is not a member of the Association the terms set forth in the market recovery agreement referenced in Article 1, Sec. 5(J) or the terms set forth in Article XVI, Article XXVII, Sec. 4(c) and/or Art. XXVII, Sec. 5 of this Trade Agreement.  This section does not apply to any agreements entered into by the Union on behalf of Local Union No. 1456.  This section does not apply to Project Labor Agreements.

**Art. XXIII. Sec. 2.** - JOURNEYPERSONS and apprentices shall not work for Employers who are not in contractual relations with the Union or any other council or local union affiliated with the I.U.P.A.T., it being understood that JOURNEYPERSONS and apprentices may work directly for the City and State of New York, and/or the Federal Government.  Contractual relations as used in this section shall mean a written agreement containing substantially all of the provisions of this Trade Agreement.

### JURISDICTIONAL DISPUTES

**Art. XXIV. Sec. 1.** - It is mutually agreed between the Parties hereto that in the event of disputes between Trades and disputes relative to questions of jurisdiction, the Parties will abide by previous decisions as to jurisdiction published in "The Green Book."

It is mutually agreed between the Parties hereto that disputes between Trades and disputes relative to jurisdiction of Trades not covered by decisions in the latest issue of the Green Book shall be adjusted in accordance with the principles of the New York Plan for the Settlement of Jurisdictional Disputes as set forth in the Joint Arbitration Plan of the New York Trades as adopted on July 9, 1903 and amended thereafter.

Pending determination of any dispute under the New York Plan for the Settlement of Jurisdictional Disputes, as stated in the previous paragraph, the members of the Union shall remain at work on the project without change in status.

### NATIONAL LABOR RELATIONS ACT

**Art. XXV. Sec. 1.** - Without recognizing the applicability of the National Labor Relations Act to the New York City Painting Industry or to the Building and Construction Industry, the Parties agree that they will abide by the provisions of said Act, and by any amendments thereto of general application or specifically applicable to the Building and Construction Industry, or any other applicable statute.  Any and all provisions of this Trade Agreement which may be in conflict with said Act or amendments thereto or other applicable statute, shall be deemed to be modified and amended accordingly so as to conform to and comply with said Act or any amendments thereto or other applicable statute.



## SAVINGS CLAUSE

**Art. XXVI. Sec. 1.** - In the event there is a change in the state or federal laws which affect any of the terms of this Trade Agreement, the terms of this Trade Agreement shall be automatically modified or stricken in accordance with the change of the state or federal law as of the effective date of said change. The modification or changes in the state or federal law shall not affect the validity of the balance of this Trade Agreement which is not in conflict with said change. Further, any provision of this Trade Agreement which provides for union security or employment in a manner and to an extent prohibited by any law or the determination of any governmental board or agency, shall be and hereby is of no force or effect during the term of any such prohibition. It is understood and agreed, however, that if any of the provisions which are hereby declared to be of no force, or any restrictions imposed by law are determined either by Act of Congress or other legislative enactment or by a decision of the court of highest recourse to be legal or permissible, then such provision shall immediately become and remain effective during the remainder of the term of this Trade Agreement. In the event that there shall be changes in applicable laws concerning the expansion or enlargement of union security, they shall automatically be incorporated into the terms and conditions of this Trade Agreement and become effective during the remainder of its term. In the event that any provision of this Trade Agreement shall be declared to be in violation of law, the remaining provisions of this Trade Agreement shall continue in full force and effect.

**Art. XXVI. Sec. 2.** - The use of any terms in this Trade Agreement that may connote a masculine gender is intended to include all persons, whether male or female, and such usage is not intended to indicate any bias or discrimination in connection with membership in the Union or employment by any Association Employer.

## WALLCOVERERS' PRICE LIST & GENERAL REGULATIONS

**Art. XXVII. Sec. 1.** - Wages and Benefits.

a).      The Wage and Benefit package will be adjusted each year according to the current Agreement and commencing May 1, 2019 shall be adjusted as follows:

        i.      Effective May 1, 2019: The the piece rates shall increase 1.14% and the hourly wage shall become $45.40. The divisor shall be $39.

       ii.      Effective May 1, 2020: The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation.. The divisor shall be $40.

     iii.      Effective May 1, 2021: The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation.. The divisor shall be $41.

     iv.      Effective May 1, 2022: The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation.. The divisor shall be $42.



    v.    Effective May 1, 2023: The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation..  The divisor shall be $43.

While the Parties have agreed upon the divisor for each year of the Agreement, as indicated above, and that the hourly rate for paper hangers shall be $45.40 effective May 1, 2019-April 30, 2020, the Parties have not yet determined what the hourly rate for paper hangers shall be for any other year of the Agreement because the allocation of the remaining economic package increases called for in Article III (above) has not yet been completed.  The Union agrees to make allocation decisions as quickly as possible before May 1 of each year, but no later than 30 days before the effective date of that year's economic package increase.

b).    The amount of the cost-of-living adjustment shall be determined and re-determined on the basis of the official New York City Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) published by the U.S. Department of Labor Bureau of Labor Statistics (1967=100) and referred to herein as the Index.

c).    Cost of living increases shall be determined as demonstrated in the example cited in Art. III, Sec.11(C), above.

d).    All jobs having paperhanging work shall be registered with the Union on the same form required for registering painting jobs.

e).    All wall coverers' work shall be done by the piece according to this Price List, except making samples of treatments for use by the Employer, repairing, stripping of wall covering, preparatory work normally done by the JOURNEYPERSONS, which shall be charged for at the hourly rate in effect at that time.

While the Parties have agreed that the hourly rate for paper hangers shall be $45.40 effective May 1, 2019-April 30, 2020, the Parties have not yet determined what the hourly rate for paper hangers shall be for any other year of the Agreement because the allocation of the remaining economic package increases called for in Article III (above) has not yet been completed.  The Union agrees to made allocation decisions as quickly as possible before May 1 of each year.

**Art. XXVII. Sec. 2**. - General Wallcoverer Regulations.

(a)    Pay and Work Rules

(1).    No Association member nor any JOURNEYPERSON or apprentice may change the rates quoted herein.

(2).    No Association member nor any JOURNEYPERSON or apprentice is allowed to establish a price for hanging any material not specified in this price list.



(3).     Wallcoverers must be paid individually and weekly for the performance of work covered by this Trade Agreement.

(4).     Wallcovers must use a daily timesheet, the text of which shall be agreed upon by the Parties.

(5).     Where a dispute exists, no wages may be withheld unless a complaint is filed with the Joint Trade Committee and is brought to the attention of District Council No. 9.  Only the amount in dispute shall be withheld and must be placed in escrow with the Joint Trade Committee, pending settlement.  Such settlement shall be completed within a period of seven (7) days from the filing of the complaint.

(6).     A Wallcovering Sub-Committee of the Joint Trade Committee shall include a representative of the Wallcoverers Craft and a representative of the Association. This Sub-Committee shall adjust, dispose of and settle all grievances, complaints and any other problems of the Wallcovering Industry, and determine prices of new material, within forty-eight (48) hours after receipt of said grievance or complaint.  If the Sub-Committee cannot resolve the matter within that time period, it shall refer the matter to the Joint Trade Board.

(7)     (A).     Wallcoverers and apprentices are prohibited from subcontracting or lumping work.  Wallcoverers and apprentices shall not advertise to contract work. Association members are prohibited from subcontracting work to Wallcoverers and apprentices.

        (B)     All hiring of wallcoverers must be done by the Association members, but only through the Union in accordance with Art. II.

        (C).     No wallcoverer other than a Union Business Representative is allowed to send other wallcoverers to any jobs.  In the event that a member of the Union sends another wallcoverer to a job, the Union must take disciplinary action against the offending party.

(8).     In the Bronx, Brooklyn, Manhattan and Staten Island, all materials, such as pasteboards, pails, wallcovering glue, tacks, ladders, scaffolds, and table legs, shall be furnished and delivered to the job by the Association member.

(9).     Wallcoverers kept waiting for materials, ladders, scaffold, pasteboards, etc., or sent on work that is not ready, shall receive the prevailing hourly wages.  Wallcoverers shall contact the shop before leaving from the job.

(10).     Wallcoverers shall be responsible for their workmanship to guarantee a satisfactory job. The Union will take joint responsibility with the Employer for adjusting problems relative to repairs or defective work, even if the responsible wallcoverer is no longer employed by the Employer.

(11).     Wallcoverers are not responsible for goods hung over old wallpaper, varnished, waxed, or enameled surfaces.

(12)

54



(A)    Failures caused by lack of lining shall not be the responsibility of the wallcoverers, where such lining is willfully omitted by the Employer.

(B)    Failures caused by lack of lining shall not be the responsibility of the Employer, where such lining is willfully omitted by the wallcoverer.

(13).    The standard work week and flexible hours shall be as set forth in Art. IV, Sec. 1(A), Sec. 1(B) and Sec. 2(A).

(14).    The Apprentice Ratio shall be that set forth in Art. VII, Sec. 5 of this Trade Agreement.

(15).    On all quantity discount-sized jobs as defined in Art. XXVII, Sec. 4, a Job Steward shall be placed.  Such placement shall be made in conformity with Art. IX, above.

(16).    JOURNEYPERSONS and apprentices shall submit time sheets to the Employer weekly, indicating names of men, including apprentices, working on a job, and the dates worked.

(17).    The pay scale for registered wallcoverer apprentices shall be based on a percentage of the applicable painter hourly rate as set forth in Art. III, Sec. 1.  The apprentice percentage rate of pay shall be as provided for in Art. VII, Sec. 1.  Apprentice hours worked and the percentage rate as provided in Art. VII, Sec. 1. are to be shown on all time sheets submitted for payment.

(18).    The Union shall appoint Shop Stewards in all shops having a wallcoverers annual payroll over $80,000 in the preceding calendar year.

(19).    Wallcoverer Stewards shall be placed on all jobs of out-of-town employers doing work in the jurisdiction of the Union.

(20).    An agreement has been reached as to limiting weights of materials.  A Joint Committee shall survey the problem and determine maximum weights.

(21).    Adhesive containers shall be four (4) or five (5) gallons depending on availability.

(22).    Foremen shall receive pay in addition to their regular earnings depending upon the number of JOURNEYPERSONS on a job, including the foreman, in accordance with the following schedule:

| | |
|---|---|
| 8 to 13 journeypersons | 1 hour |
| 14 to 19 journeypersons | 2 hours |
| 20 to 24 journeypersons | 3 hours |
| 25 or more journeypersons | 7 hours |

(23).    Wallcoverers shall not deliver bulk materials from the sidewalk to a job site.

(24).    A JOURNEYPERSON who distributes a business card with his name on it shall be deemed to be advertising to do contract work.  In such cases, the Union must take disciplinary action against said JOURNEYPERSON, and the distribution of these business cards must cease.



(25). Prices quoted herein are based on rolls eighteen (18) inches wide and eight (8) yards in length.

(26). Square yards measured are to be computed by multiplying the greatest length and width of any irregular shaped surface.

(b). Special / Extra Charges

(1). On all work, the actual amount of goods required to cover a room, etc., shall be charged.

(2). On all plain goods, 10% additional quantity shall be charged for shrinkage, waste or trimming above square measure.

(3). On all figured goods, the actual amounts of goods required to be cut shall be charged.

(4). Lining paper shall be charged in each instance in the same quantity as finished goods hung thereupon.

(5). For goods hung in a cove, 50% over the actual amount of the goods required shall be charged.

(6). For materials hung with hazardous insoluble cements, 50% over the actual amount of the goods required shall be charged. For materials hung with nonhazardous insoluble cements, there shall be no extra pay.

(7). For goods hung on a ceiling with a cove, $0.63 (sixty-three cents) extra per yard over the actual amount of the goods required shall be charged for the entire ceiling.

(8). For goods hung on sand-finished walls or ceilings, or on muslin, $1.11 per roll, $0.33 (thirty-three cents) per square yard over the actual amount of the goods required shall be charged.

(9). For goods cut to finish for ornamental work, 20% over the actual amount of the goods required shall be charged.

(10). The lower part of a wall, if it is decorated differently from the upper part and is less than five feet high, shall be known as Dado.

(11). Where three (3) papers are used on walls in one room, they shall be known as Frieze, Wall and Dado. Where two (2) papers are used on walls in one room, the shortest of the two shall be Frieze or Dado. The other shall be wall price.

(12). Goods required to be hung horizontally are to be charged the same price as Frieze or Dado.

(13). Definition of panels. A panel is a surface on a ceiling or a wall surrounded by a molding whose area does not exceed 100 square feet. A ceiling or wall which is cut up into panels, a number of which is smaller than 100 square feet, shall be classified as paneled ceiling or wall.



(14).    For square, round or decorative arches, sinks, washbasins, doors per side, electric and telephone box doors (and in the bathrooms when area behind sink or commode is being papered), and freestanding water coolers, as per yearly price list.

(15).    The charge for hanging wallpaper or other material in rooms where more than one wall has beams or coves, and where ceiling and wall joins, shall be as specified in column 2 of the wallcoverers' price list, provided that the beams are papered. In rooms where beams are on one wall, column 2 of the price list will apply to one wall only.

(16).    The charge for hanging wallpaper or other material on columns only, is to be specified in column 3 of the wallcoverers' price list.  Window columns only, when not attached to wall areas being covered, will be specified in column 3 on wallcoverers' price list.

(17).    Horizontal Face boards up to twenty-four (24) inches in width shall be paid the piece rate plus 50% on material hung.  Graphics shall be paid on the basis of piece rate for material hung plus the hourly rate for lay out time.

(18).    Where shelves, moldings, casings, brackets, switch plates, etc., are covered, the wallcoverers' hourly rate shall be charged in addition to material used.

(19).    Any wall length four (4) feet or less in height shall be charged the same as in the 2nd column.

(20).    Heights of seventeen (17) feet or more shall be paid for at 15% above wallcoverers' price list.  This shall not apply where there is a completely decked working platform.

(21).    Dressing booths or coupon booths under forty (40) square feet; floor area; and where counters, seats or mirrors are attached to walls, shall be charged as indicated in the 3rd column of the wallcoverers' price list.

(22).    All items listed under cloth and vinyl returns one (1) inch or less, as per yearly price list

**Art. XXVII. Sec. 3.** - Wallcoverers Price List.

(a).    All Wallcoverers overtime shall be paid on the basis of Wallcoverers piece rate plus 50% of that piece rate.

(b).    Wallcoverers' Price List.

The only price list contained in this Agreement is the one effective from May 1, 2019-April 30, 2020.  This is because some of the prices on the list are keyed to the wage rate, which for years other than May 1, 2019-April 30, 2020, has not yet been set because the union has yet to determine the allocation of the economic package for those remaining years.  Once the allocation for future years has been made, the price list will be amended each year based on that year's wage rate.  The numbers for each year's price list will be set by using the same calculations and formulas that led to the creation of the May 1, 2019-April 30, 2020 price list.

| WALLCOVERER'S PRICE LIST | #1 | #2 | #3 |
| --- | --- | --- | --- |



**May 1, 2019 - April 30, 2020**

| | Wall Space | Ceilings, Gable Walls, walls w/ stairs, walls w/coves, Beams, Friezes, Mailrooms, Dadoes, Panels | Ceiling only, Bathrooms, Toilets, Closets, Kitchens, Pantries, Columns, Spiral Stairways |
|---|---|---|---|
| **Wallpaper** | | | |
| 1. Lining Paper p/roll | $7.37 | $8.15 | $9.15 |
| 2. Wallpaper costing to $5:00 p/roll retail excluding hand prints | $13.78 | $15.25 | $17.54 |
| 3. Wallpaper costing $5.01 to $14.00 p/roll including all grass cloths, silver & gold coated grass cloths. Wallpaper costing $14.00 or over p/roll retail, including Flocks, Tech Metal, Foil Timbertone | $18.49 | $19.53 | $23.98 |
| 4. Japanese Gold or Wood in Sheets, Sectional Papers, Posters, Blueprints etc. up to 9 sq. ft. | | | |
| Lapped | $4.77 | $6.31 | $7.36 |
| Butted | $7.40 | $8.57 | $9.64 |
| 5. Scenery Papers or Landscape to 44" in width per strip | $35.28 | | |
| 6. Section Scenic regardless of size p/strip | $17.91 | | |
| 7. Plain Paper filler p/strip on same wall as scenic | $17.91 | | |
| 8. Hand Painted or Water Color Scenics up to 44" in width costing in excess of $60.00 p/strip retail | $53.89 | | |
| **Wood Veneer on Canvas** | | | |
| 1. Plain Work, Panels, Stairways, Columns, Ceilings, Dadoes, wall w/beams, p/square foot | $1.91 | | |
| 2. Stiles, Casings, Door frames, Arches and around panels, with or without moldings any width under 12" p/running foot | $1.91 | | |
| **Blancharized Vinylite, Suede Backed Vinyl, Rigi-Wall and Similar Type Materials** | | | |
| 1. Walls, Ceilings, Panels, Dadoes, Stairways, Columns, p/square foot | $1.69 | | |
| 2. Stiles, Casings, Door frames, Arch and Secret doors and around panels, with or without moldings, any width under 12" p/running foot | $1.69 | | |
| **Cork** | (up to 1/8" | (over 1/8" heavy wt.) | |

58

|  | **light wt.)** | | |
|---|---|---|---|
| Per square foot | $1.53 | $2.11 | |
| Forbo | $3.39 | | |

**Photo Murals**

| Per square foot | $1.78 | | |
|---|---|---|---|

**Striated or Sculpted Plastic**

| Per roll | $50.17 | $53.89 | $58.02 |
|---|---|---|---|

**Borders**

**A.** All borders, styles and extensions are to be charged by the yard. Friezes over 9" in width are to be charged proportionally.

**B.** Nursery and scenery borders in sheets, 50% extra. When laid out in panels, double the price.

**C.** Forming panels of striped paper by using strips of the wallpaper at the top and bottom, each cap $1.16 and 0.93 cents per miter.

**D.** Cutting out border to be charged at wallcoverers' hourly rate. No extra charge for straight cuts.

**E.** Borders, etc., hung in coves, 50% extra.

**F.** From 1" to 9" per running yard.

| 1.  Paper | $1.45 | $1.64 | $2.24 |
|---|---|---|---|
| 2.  Printed Vinyl | $4.72 | $5.13 | $5.77 |
| 3.  Solid Vinyl, Felt or Hand prints | $3.81 | $4.34 | $5.01 |

**Stiles**

From 1" to 9" per running yard

| 1. Paper | $2.72 | | |
|---|---|---|---|
| 2. Vinyl, Felts or Hand prints | $5.92 | | |

**Cloth and Vinyl**

| 1. All Fabrics, Felt (E.g. FilzFelt and similar products) Textiles, natural or synthetic, regardless of backing, or unbacked. Tufted Materials, Fabric backed Cork, p/square yard | $8.69 | $9.49 | $10.21 |
|---|---|---|---|
| 2. Woven Paper per square yard | $6.79 | $7.50 | $8.21 |
| 3. Cloth backed Foil per roll | $22.78 | $26.35 | $29.69 |
| 4. Oil Painting, Hand Painted Canvas per square foot | $2.24 | $2.75 | $3.29 |
| 5. Stencil Decorated Glass or Sanded Canvas per square foot | $1.18 | $1.40 | $1.45 |
| 6. Sheepskin or Natural Leather per square yard | $10.05 | $10.99 | $14.86 |
| 7. Unfinished Canvas for Painting only per square yard | $5.36 | $6.30 | $6.82 |



| | Up to .24 = 0 | From .25 to .74 = ½ | .75 and over = 1 Hour |
|---|---|---|---|
| 8. Vinyl, Canvas up to 13 oz. per square yard | $5.95 | $6.79 | $7.50 |
| Patterned Goods per roll | $23.73 | $27.28 | $29.97 |
| 9. Vinyl over 13 oz. to 24.5 oz. and all hand printed vinyl, paper or cloth backed, regardless of weight per square yard | $6.79 | $7.50 | $8.57 |
| Patterned Goods per roll | $27.28 | $29.97 | $34.31 |
| 10. Vinyl over 25.5 oz. Flocked or Metal faced Vinyl, Flock on Foil, paper or fabric backed regardless of weight, per square yard | $7.50 | $8.57 | $10.20 |
| Patterned Goods per roll | $29.97 | $34.31 | $40.18 |
| 11. Walltalkers | Apply price of vinyl wallcovering by weight of material | | |

**Curon**

| | | | |
|---|---|---|---|
| Per square foot | $1.26 | | |

**Fiberglass**

| | | | |
|---|---|---|---|
| Per square yard | $6.79 | $7.50 | $8.57 |
| Undercover Paper, Polyester Lining p/square yard | $5.36 | $6.30 | $6.82 |

**Fabric Track Systems**

1. Installation track batting and fabric p/linear ft.
2. Installation of fabric only.
3. Panel under 16 square foot to be charged at higher rate.

To be determined by joint pricing committee.

**All Wallcoverers Overtime shall be paid on the basis of Piece Rate plus 50% of the Piece Rate.**

**All Benefits will be paid on Full Gross Pay.**

**Hours**

**Divide $39.00 into Full Gross Pay for hours.**

| | Up to .24 = 0 | From .25 to .74 = ½ | .75 and over = 1 Hour |
|---|---|---|---|
| **Quick References** | | | |
| **Vinyl** | | | |
| Vinyls, Canvas up to 13 oz. p/square yard | $5.95 | $6.79 | $7.50 |
| Patterned Goods per roll | $23.73 | $27.28 | $29.97 |
| Vinyls over 13 oz. to 24.5 oz. and all hand printed vinyl, paper or cloth backed, regardless of weight per square yard | $6.79 | $7.50 | $8.57 |
| Patterned Goods per roll | $27.28 | $29.97 | $34.31 |
| **Fabric** | | | |

| | | | |
|---|---|---|---|
| All fabric Felt (E.g., FilzFelt and similar products) textiles, natural or synthetic, regardless of backing, or unbacked, Tufted Materials, Fabric backed Cork, p/square yard | $8.69 | $9.49 | $10.21 |
| **Hourly Rate** | **$45.40** | | |
| **Returns to 24 ½ oz.** | **$0.52** | | |
| **Over 24 ½ oz.** | **$0.93** | | |
| Square, round, or decorative arches, sinks, washbasins, doors per side, electric and telephone box doors (and in bathrooms when area behind sink or commode is being papered) and free standing water cooler | $10.83 | | |

**Art. XXVII. Sec. 4.** - Quantity Discounts.

(a).     All jobs having the quantities listed in this section must be registered with Union five (5) days before starting.  Wallcoverers working on Quantity Discount jobs are to be limited to earning an amount not in excess of $800.00 per job, except the head wallcoverer, who is not to be limited as to the amount of work or earning. On all Quantity Discount jobs requiring over 4,000 square yards of cloth and/or material, the Association member may employ an assistant head wallcoverer who is not to be limited as to the amount of work or earnings on said job.  It is understood that on all multiple jobs a wallcoverer Job Steward will be placed by District Council No. 9.

(b).     Wallcovering jobs requiring over 800 square yards of cloth and/or material shall comprise a multiple discount job.  Lining paper shall not be subject to discount.

(c).     The discount on piece rates for Association Employers that applies for jobs requiring over 800 square yards of cloth and/or material, where no paste machine is used, shall be as follows:

| | Manhattan, Bronx, Kings, Richmond Westchester and Putnam Counties | Queens / Nassau Suffolk Counties |
|---|---|---|
| Effective 5/1/19: | 10% | 10% |
| Effective 5/1/20: | 10% | 10% |
| Effective 5/1/21: | 10% | 10% |
| Effective 5/1/22: | 10% | 10% |



Effective 5/1/23:                    10%                         10%

**Art. XXVII. Sec. 5.** - Paste Machine.

(a)      Association Employers shall have the right to utilize the paste machine beginning on May 1, 2001 in accordance with this Section for quantities over 800 square yards.

(b)      The discount on piece rates for all Association Employers where the paste machine is used shall be as follows:

Effective 5/1/19:          15%, unrestricted use of the paste machine

Effective 5/1/20:          15%, unrestricted use of the paste machine

Effective 5/1/21:          15%, unrestricted use of the paste machine

Effective 5/1/22:          15%, unrestricted use of the paste machine

Effective 5/1/23:          15%, unrestricted use of the paste machine

**Art. XXVII. Sec. 6.** - National Pension and Fringes.

| Paperhangers Rate | 5/1/2019-4/30/2020 |
|---|---|
| | Base Rate |
| Wages:* | 45.40 |
| H&W | 11.22 |
| Pension | 10.37 |
| Annuity | 7.23 |
| Vacation* | 5.37 |
| JATF-DC9 | 0.45 |
| JATF-IUBAT | 0.10 |
| LMCF | 0.10 |
| PAT* | 0.05 |
| O/MA* | 0.15 |
| Promo | 0.40 |
| Total Benefit Package | 35.44 |
| Total Taxable* | 50.97 |
| Dues Checkoff | 2.29 |
| 1 Hr | 37.73 |

Subsequent increases will be allocated by the Union to wages and benefits in a timely manner each year, but no later than 30 days before the effective date of that year's economic package increase.  Effective 05/1/2022, and each year thereafter, the Pension contribution called for in the



Agreement shall increase by a minimum of 5% of the total negotiated increase to wages and benefits for that year. Such increase shall be rounded up to the nearest penny.

(a).     Each Association member will contribute to the I.U.P.A.T. Union and Industry National Pension Fund, in accordance with the rules of that fund, sums of money for the period from May 1, 2019 to April 30, 2024.

(b).     Each Association member's contribution to the Insurance Fund and Painting Industry Annuity Fund on behalf of wallcoverers shall be from May 1, 2019, to April 30, 2024.

(c).     Voucher Hours are to be calculated by dividing gross wages by; $39.00 as of May 1, 2019; $40.00 as of May 1, 2020; $41.00 as of May 1, 2021; $42.00 as of May 1, 2022; $43.00 as of May 1, 2023.

   vi.    Effective May 1, 2019:  The the piece rates shall increase 1.14% and thehourly wage shall become $45.40.  The divisor shall be $39.

   vii.   Effective May 1, 2020:  The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation..  The divisor shall be $40.

   viii.  Effective May 1, 2021:  The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation..  The divisor shall be $41.

   ix.    Effective May 1, 2022:  The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation..  The divisor shall be $42.

   x.     Effective May 1, 2023: The piece rates shall increase in proportion to the increase to the hourly wage after the Union makes its allocation..  The divisor shall be $43.

(d.)    For the duration of this Trade Agreement and any renewals or extensions thereof, each Association member agrees to make payments to the I.U.P.A.T. Union and Industry National Pension Fund for each wallcoverer covered by this Trade Agreement as follows:

   (i).       For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and any other hours for which pay is received by the wallcoverer in  accordance with this Trade Agreement, shall be counted as hours for which contributions are payable.

   (ii).      Contributions shall be paid on behalf of any wallcoverer starting with his/her first day of employment.

   (iii).     The payments to the Pension Fund required above shall be made to the I.U.P.A.T. Union and Industry National Pension Fund, which was established under an Agreement and Declaration of Trust.  The Association and its members hereby agree to

63



be bound by the Agreement and Declaration of Trust as though they had actually signed the same.

(e).     The Association on behalf of its members hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.  The Association and its members further agree to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

### DURATION OF AGREEMENT

**Art. XVIII.** - The term of this Trade Agreement shall be for the period commencing May 1, 2019 and ending April 30, 2024.

Negotiations for a new Trade Agreement shall commence not later than February 2, 2024.

During the life of this Trade Agreement, neither party shall make any rules or by-laws conflicting with its provisions.

In witness whereof, the Parties hereto have caused this Trade Agreement to be signed by their respective officers the day and year first above mentioned.



International Union Painters and Allied Trades, AFL-CIO, District Council No. 9 of New York.

BY:

Joseph Azzopardi
Business Manager/Secretary Treasurer

John Drew
President/Director of Servicing

Association of Master Painters and Decorators of New York, Inc.

BY:

_____
Randy Pearlman
President

_____
Bruce Ruinsky
Executive Director

Association of Wall, Ceiling, & Carpentry Industries of New York, Inc.

BY:

_____
President

_____
Executive Director

The Window and Plate Glass Dealers Association

BY:

_____
President

65

In witness whereof, the Parties hereto have caused this Trade Agreement to be signed by their respective officers the day and year first above mentioned.

Joseph Azzopardi,
Business Manager/Secretary Treasurer

Riccardo Iaccarino, Counsel

# INDEX

Page

48-HOUR HEARINGS ....................................................................................19

ALLOCATION OF ECONOMIC PACKAGE ...........................................9

ANNUAL PAYROLL (SHOP STEWARDS)................................................21

APPRENTICE RATIO ....................................................................................17

APPRENTICE REGULATIONS ...................................................................15

ARBITRATION HEARINGS ........................................................................26

ASSOCIATION – UNION COMMUNICATION .....................................14

AWARDS ...........................................................................................................28

BONDS, DAMAGES, FEES AND INTEREST ..........................................49

BUILDING OWNER/MANAGER UTILIZING ASSOCIATION MEMBER ..........................9

CHECK-OFF OF ADMINISTRATIVE DUES ...........................................44

CONDITIONS ...................................................................................................52

COST OF LIVING ADJUSTMENT .............................................................11

DAILY TIME SHEETS (WALLCOVERERS) ............................................54

DISTRICT COUNCIL NO. 9 POLITICAL ACTION TOGETHER – POLITICAL COMMITTEE................................................................................43

DURATION OF AGREEMENT ....................................................................64

DUTIES (SHOP STEWARDS)......................................................................21

ELECTRONIC VOUCHER SYSTEM .........................................................38

ENFORCEMENT OF ARTICLE XX ...........................................................47

FINES AND PENALTIES ..............................................................................28

FINISHING TRADES INSTITUTE OF NEW YORK & IUPAT FINISHING TRADES INITITUTE......................................................................................40

FINISHING TRADES LABOR-MANAGEMENT PARTNERSHIP .......43

FOREMEN (WALLCOVERERS) .................................................................56

FOREMEN .........................................................................................................11

FRINGE BENEFIT CONTRIBUTIONS ......................................................36

GENERAL WALLCOVERER REGULATIONS ....................................................54

GRIEVANCES AND DISPUTES (EMPLOYEES) ..............................................23

HEALTH AND SAFETY RULES .........................................................................34

HEALTH AND SAFETY:  GENERAL PROVISIONS ........................................33

HEARING PROCEDURES ...................................................................................26

HIRING PROCEDURES .........................................................................................6

HOLIDAYS .............................................................................................................13

INDEX .....................................................................................................................67

INDUSTRY PROMOTION FUNDS .....................................................................45

INJURIES ................................................................................................................35

INSURANCE ...........................................................................................................36

IUPAT PENSION FUND ........................................................................................39

JOB REGISTRATION ............................................................................................22

JOB STEWARDS ...................................................................................................19

JOINT TRADE BOARD .........................................................................................24

JOINT TRADE COMMITTEE AND JOINT TRADE BOARD .............................24

JOINT TRADE COMMITTEE ...............................................................................24

JURISDICTION, RECOGNITION & SCOPE OF WORK .....................................1

JURISDICTIONAL DISPUTES ..............................................................................52

JURISDICTIONAL WORK RULES .......................................................................14

LAYOFFS ...............................................................................................................10

MAINTENANCE OF WORK ....................................................................................2

MAINTENANCE RATES .........................................................................................2

MOST FAVORED NATIONS CLAUSE .................................................................52

NATIONAL LABOR RELATIONS ACT ................................................................52

NATIONAL PENSION AND FRINGES (WALLCOVERERS) .............................63

NEW YORK CITY EARNED SICK AND SAFE TIME ACT WAIVER ................10

NON PAYMENT OR SHORTAGE OF WAGES OR FRINGE BENEFITS ...........20

NON-DISCRIMINATION .........................................................................................4

OBLIGATIONS OF THE PARTIES .........................................................................3

OSHA TRAINING ..................................................................................................36



OUT OF JURISDICTION WORK..................................................................14

OVERTIME AND OVERTIME PERMITS ...................................................13

OVERTIME VIOLATIONS ..........................................................................14

OWNER/MEMBER RULE ..............................................................................6

PAINTING INDUSTRY ANNUITY FUND ..................................................42

PAINTING INDUSTRY INSURANCE FUND ..............................................41

PASTE MACHINE (WALLCOVERERS) ......................................................62

PAPERHANGER HOURLY RATE ...............................................................63

PAYMENT OF WAGES.................................................................................18

PAYMENTS (ENFORCEMENT OF ARTICLE XX) ....................................47

PENALTIES (ENFORCEMENT OF ARTICLE XX) ....................................49

PROCEDURES ..............................................................................................25

PROTECTIVE EQUIPMENT ........................................................................34

QUANTITY DISCOUNTS (WALLCOVERERS) .........................................62

REMITTANCE REPORTS ............................................................................38

REMOVAL OF JOB STEWARDS .................................................................19

REMOVAL OF SHOP STEWARDS ..............................................................21

RULES AND REGULATIONS ......................................................................25

SAVINGS CLAUSE .......................................................................................53

SCAFFOLDS..................................................................................................36

SCHEDULE OF FINES .................................................................................29

SECURITY AND DRUG/ALCOHOL TESTS ..............................................34

SHOP STEWARD REPORTS ........................................................................21

SHOP STEWARD REPORTS (FRINGE BENEFIT CONTRIBUTIONS) .....39

SHOP STEWARDS.........................................................................................21

SIGNATURE PAGE .......................................................................................65

STANDARD WORK WEEK ...........................................................................12

STEWARDS' COMMITTEE...........................................................................22

STRIKES AND LOCKOUTS .........................................................................31

SUBCONTRACTS..........................................................................................32

SUPREMACY CLAUSE ..................................................................................4

TERRITORIAL JURISDICTION ................................................................................................3

THREE HUNDRED FIFTY HOUR RULE ................................................................................6

TIME FOR STEWARDS' DUTIES ..........................................................................................22

TRUST FUND HEARING..........................................................................................................51

UNIFORMS ................................................................................................................................35

UNION REPRESENTATIVES...................................................................................................23

UNION MEMBER NONCOMPETE...........................................................................................5

USE OF NON-UNION EMPLOYEES ......................................................................................19

USE OF SPRAY AND PASTE MACHINES ............................................................................33

VIOLATIONS ............................................................................................................................39

WAGES – APPRENTICES.........................................................................................................15

WAGES – DRYWALL FINISHING RATES ..............................................................................9

WAGES – JOURNEYPERSONS .................................................................................................6

WAGES AND BENEFITS/DIVISOR (WALLCOVERERS) ....................................................53

WALLCOVERING .....................................................................................................................10

WALLCOVERER APPRENTICE BILLS..................................................................................17

WALLCOVERERS' PRICE LIST..............................................................................................58

WALLCOVERERS' PRICE LIST AND GENERAL REGULATIONS ....................................53

WHISTLEBLOWER PROTECTION ..........................................................................................5

WORK OUTSIDE GEOGRAPHIC JURISDICTION ...............................................................14

WORKING CONDITIONS.........................................................................................................12

71523

IN WITNESS WHEREOF the parties here to have set their hands, this date_____ 20__,

To be effective as of _____, and we have entered into a Glaziers Trade Agreement with the District Council No. 9, of the International Union of Painters and Allied Trades, territorial jurisdiction as per Art. I. dated May 1st, 2017 through April 30th, 2023 and have received a printed copy of said Agreement.

It is hereby agreed and understood that this will serve as signature page of afore-said Agreement, for the District Council No. 9 files.

For DISTRICT COUNCIL 9: _____        _____

Joseph Azzopardi                    John Drew
Secretary – Treasurer              President

For EMPLOYER:

Company Name: (Print) _A plus Installations_____

Company Address: (Print) _136 Harvey Ave_____

_Doylestown PA 18901_____

Company Telephone: _2153484978_ FAX: _2153484978_

Email Address: _aplusinstallations@aol.com_____

Signature: _____

Name of Principle: (Print) _Susanine Krinke_____
(Print Full Name)

Is your company MWBE (Minority/Women Business Enterprise)? ____no____